## Coxe *et al. versus* Deringer *et al.*

1. Where a commissioners' deed dated June 5th 1827 made in pursuance of a sale of land for taxes, recited the performance of the directions of the Act of 29th of March 1824, and the sale had never been impeached by the county, and the purchaser had paid taxes upon the tract for forty years after the sale, but had not taken actual possession, it was for the jury to determine whether the requirements of the Act had been complied with. A party claiming under a commissioners' deed is not required to prove the pre-requisites of the sale positively under all circumstances. Natural presumptions arising from already proved facts which lead to a belief that the directions of the law have been fulfilled, must be submitted to a jury in this as in other cases.

2. A treasurer's deed to commissioners, reciting a sale for taxes, is the best evidence of the fact of the sale, and it cannot be avoided by anything less than clear and strong evidence that no sale was made, and therefore where defendants in ejectment offered a treasurer's deed, dated November 25th 1828, the fact that there was no entry of the sale in the treasurer's sale book for 1828, and that the treasurer, on the 4th of February 1829, wrote a letter to plaintiffs' ancestor, which made no mention of the sale to the commissioners in 1828, and that afterwards he received the taxes for 1828 and 1829 of plaintiffs' ancestor, and said nothing of the sale in 1828, are not sufficient evidence to invalidate the deed or overturn the fact of the sale.

3. The tax receipts of plaintiffs having been destroyed several witnesses testified that they had seen the receipts; that they covered the period from 1826 to 1868, with a lapse from 1844 to 1848; that they were continuous and complete, in biennial periods, were regular in form, character and time of payment, and recited the names, quantity and locality of the tracts of land: *Held*, upon the question of the validity of a treasurer's deed for these lands sold for the unpaid taxes for the years 1832 and 1833, that this evidence was properly submitted to the jury to determine whether the taxes assessed upon these lands for 1832 and 1833 had been paid before the sale.

4. McReynolds *v.* Longenberger, 7 P. F. Smith 13, discussed and distinguished.

June 2d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Luzerne county*: Of January Term 1876, No. 55. Certified from Eastern District.

This was an ejectment for a tract of land in Sugarloaf township, Luzerne county, in the warrantee name of Samuel Rope, containing about four hundred acres, brought by Theophilus T. Deringer and others, the heirs and legal representatives of Henry Deringer, deceased, against Charles S. Coxe and others.

The action was brought in May 1872, and was heard by this court in March 1875, upon a former writ of error taken by the defendants below to a judgment in favor of the plaintiffs, which judgment was reversed May 10th 1875 (see 28 P. F. Smith 271).

The case was tried the second time before Harding, P. J., and on the 6th of November 1875 a verdict again rendered for the plaintiffs.

On the second trial the plaintiffs claimed under a tax title of which evidence was given as follows :—

[Coxe *v.* Deringer.]

Survey, October 4th 1793, on warrant to Samuel Rope, dated June 13th 1793, containing 372¼ acres and allowance.

*Commissioners' Unseated Land Book for 1819.*

Sugarloaf—372 acres, Samuel Rope—Val. 372—Tax 1.86, "new."
For 1818.   372 acres—Samuel Rope—Val. 372—Tax 1.86.

*Assessment Books for 1818 and 1819.—Sugarloaf.*

1818—Rope Samuel 372 acres, no valuation or tax.
1819—Rope Samuel 372 acres—Val. 372—Tax 1.86.

*Treasurer's Sales Book for 1820.—Sugarloaf.*

| Acres. | Warrantee Name. | Years. | Co'y tax. | Costs. | Total. | Purchaser. |
|---|---|---|---|---|---|---|
| 372 | Rope Samuel | 1818 | 1.86 | | | Nov. 8, |
| | | 1819 | 1.86 | 2.62½ | 6.34½ | Commissioners. |

Deed, Dec. 2d 1820, of Geo. M. Hollenback, treasurer of Luzerne county, to commissioners of Luzerne county, for Rope, Samuel, Sugarloaf, containing 372 acres.  Sold for taxes of 1818 and 1819.

*Commissioners' Sales Book of 1826.—Sugarloaf Township.*

| Acres. | Warrantee Name. | Time of Sale. | Remarks. | Amount. |
|---|---|---|---|---|
| 372 | Rope Samuel | 1820 | Amount of sale, | $6.59½ |
| | | | 5 years' interest, | 1.97½ |
| | | | Co. tax 1820-21 | |
| | | | Rd. tax '19, '20, | 7.44 |
| | | | 3 years' int. on do. | 1.33½ |
| | | | Co. tax '22, '23, | |
| | | | Rd. tax '21, '22, | 7.44 |
| | | | 1 year's int. on do. | 44½ |
| | | | Co. tax '24, '25, | |
| | | | Rd. tax '23, '24, | 7.44 |
| | | | Advertising, | 12½ |
| | | | | 32.79½ |

July 8th 1826, sold to Henry Deringer and T. Auchternecht,
 for    .    .    .    .    .    .    .         32.79½
John Ewing, Cryer, Deed and Cryer,    .    .         1.25

                                                    34.04½

*Commissioners' Land Book—For Lands bought at Treasurer's Sales of 1826.*
*Sugarloaf.*

| Acres. | Warrantee Name. | Amount of Sale. | | Taxes added. County Tax. | Road Tax. |
|---|---|---|---|---|---|
| 372 | Rope Samuel | 6.59½ | 1819 | | 1.86 |
| | | | 1820 | 1.86 | 1.86 |
| | | | 1821 | 1.86 | 1.86 |
| | | | 1822 | 1.86 | 1.86 |
| | | | 1823 | 1.86 | 1.86 |
| | | | 1824 | 1.86 | 1.86 |
| | | | 1825 | 1.86 | |

1827

Deed, June 5th.    Henry Deringer; consideration $34.04½; Road
        Tax, $11.16.

Plaintiffs' counsel then offered deed dated June 5th 1827, of Deo-
dat Smith, Arnold Colt and John Bittenbender, commissioners of
Luzerne county, to Henry Deringer, for Rope Samuel, 372 acres,
reciting public sale of 8th July 1826; consideration $34.04½.
Acknowledged before one of the judges of the Court of Common
Pleas in and for said county.    9th June 1827, receipt of treasurer
attached for bid, &c., $34.04½.

Defendants' counsel objected to the introduction of this deed, for
the reason that no compliance had been shown with the provisions of
the Act of 29th of March 1824, requiring advertisement and public
notice.    The court overruled the exceptions and admitted the deed,
and sealed a bill of exception for defendants.

Plaintiffs here rested.

Defendants' counsel then asked for a nonsuit on the grounds that
a compliance with the requirements of the statute had not been
shown in the sale by the commissioners in 1826; and also because
the receipt of the treasurer annexed to the commissioners' deed,
dated 9th June 1827, shows that the money was not paid until
four days after the deed was made.

The court ruled, that unless further testimony be produced by
plaintiffs tending to raise a presumption of law or of fact that the
preliminary requirements of the Act of 1824 were complied with,
the motion for a nonsuit would be granted.

Plaintiffs' counsel under this ruling re-opened their case and
made the following offer in writing:—

"Plaintiffs offer to show from the records of the treasurer's and
commissioners' office that at the time the Samuel Rope tract was
sold by the treasurer to the commissioners in November 1820, four
other tracts were sold on the same day, in the names of John
Brady, Joseph Brown, John McGowan and Job Rope, and at
the sale of the commissioners, July 8th 1826, they sold these four
tracts with the Samuel Rope tract to Henry Deringer.    That
Henry Deringer, after his purchase from the commissioners in 1826,
paid the taxes on these several tracts which belong to the same
body, and lie contiguous and near to each other, year by year to
the treasurer until his death in 1868, with the exception of four
years from 1844 to 1848; that Henry Deringer resided in Phila-
delphia; that he kept his receipts for the payment of taxes on these
several tracts of land all together in a place where he was accus-
tomed to keep his valuable papers in his dwelling-house; that
after his death, by inadvertence these receipts with other papers
were destroyed; to be followed by proof of witnesses who saw the
receipts for these lands, that they were receipts for the payment
of taxes on these five tracts of land from 1826 to 1844.

[Coxe *v.* Deringer.]

" Defendants objected to the introduction of any evidence of payment of taxes upon the tract in controversy, if offered for the purpose of raising any presumption either of law or fact, that the preliminary requirements of the Act of 1824 were complied with by the commissioners who sold to Henry Deringer in 1826. Defendants also objected to the evidence of the sale of or payment of taxes upon any other tracts of land than the one in controversy."

Objections overruled, evidence admitted and bill sealed.

Plaintiffs then offered :—

*Assessment Books, Sugarloaf Township.*

1818—Joseph Brown, 400 acres.
1819—Joseph Brown, 400 acres, Tax, $2.00.

*County Rates and Levies—Sugarloaf—"Additions," p.* 90.

1818—Brown Joseph, 400 acres, Value $400, Tax $2.00.

*Commissioners' List to Treasurer—p.* 45.

1819—Brown Joseph, 400 acres, value $400—tax $2.00—under head of owners—" John Stoddart."

*Treasurer's Sales Book for* 1820.

| | | | Co. Tax. | Costs. | Total. | Purchaser. |
|---|---|---|---|---|---|---|
| 400 acres, | Brown Joseph, | 1818 | 2.00 | | | Nov. 8. |
| | | 1819 | 2.00 | 2.62½ | 6.62½ | Commissioners. |

Deeded.

*Commissioners' Land Book—Purchases at Sale of* 1820—*Sugarloaf.*

400 acres, Brown Joseph, Amount of sale, $6.87½
5th June 1827, Henry Deringer—Consideration $34.00.

*Commissioners' Sales Book—Sugarloaf.*

400 acres, Brown, Joseph.
8th July 1826, sold to Henry Deringer and F. Auchternecht.
Deed 5th June 1827, to Henry Deringer.

Similar entries were also put in evidence in regard to the John Brady, John McGowan and Job Rope tracts, all of which, by these entries, appeared to have been deeded to Henry Deringer on the 5th of June 1827.

The following entries were then offered :—

*Treasurer's Transcript Book of Unseated Lands, Page* 16.

HENRY DERINGER,

To LUZERNE COUNTY, for Taxes, Dr.

| Acres. | Warrantee Names. | Township. | Co. 1838 | Rd. 1838 | Co. 1839 | Rd. 1839 | Total. |
|---|---|---|---|---|---|---|---|
| 400 | Joseph Brown, | Sugarloaf, | 2.00 | 2.00 | 2.00 | 2.00 | 8.00 |
| 400 | John McGowan, | " | 2.00 | 2.00 | 2.00 | 2.00 | 8.00 |
| 372½ | Samuel Rope, | " | 1.86 | 1.86 | 1.86 | 1.86 | 7.44 |
| 372¼ | Job Rope, | " | 1.86½ | 1.86½ | 1.86½ | 1.86½ | 7.46 |

$30.90

30th March 1840, received above in full.

[Coxe *v.* Deringer.]

## Page 110.

HENRY DERINGER,

To LUZERNE COUNTY, for Taxes, Dr.

|  |  |  | Co. | 1840. Rd. | Sch. | Co. | 1841. Rd. | Sch. |  |  |
|---|---|---|---|---|---|---|---|---|---|---|
| 373½ | Rope Job, | Sugarloaf, | 1.87 | 1.87 | 1.49 | 2.24 | 1.87 | 1.49 | 37½ | $11.21 |
| 372 | Rope Samuel, | " | 1.86 | 1.86 | 1.49 | 2.23 | 1.86 | 1.49 | 37½ | 11.17 |
| 400 | McGowan John, | " | 2.00 | 2.00 | 1.60 | 2.40 | 2.00 | 1.60 | 40 | 12.00 |
| 400 | Brown Joseph, | " | 2.00 | 2.00 | 1.60 | 2.40 | 2.00 | 1.60 | 40 | 12.00 |
| 400 | Brady Robert, | " | 2.00 | 2.00 | 1.60 | 2.40 | 2.00 | 1.60 | 40 | 12.00 |

|  |  |
|---|---|
|  | $58.38 |
| Advertising 1 Tract, | 50 |
| Total, | $58.88 |

(No receipt on this entry.)

## Page 159.

HENRY DERINGER,

To LUZERNE COUNTY, Dr.

|  |  |  |  | 1842. |  |  | 1843. |  |
|---|---|---|---|---|---|---|---|---|
| 400 | Brady Robert, | Sugarloaf, | 1.60 | 3.20 | 80 | 2.40 | 2.40 | 1.60 |
| 400 | Brown Joseph, | " | 1.60 | 3.20 | 80 | 2.40 | 2.40 | 1.60 |
| 400 | McGowan John, | " | 1.60 | 3.20 | 80 | 2.40 | 2.40 | 1.60 |
| 373 | Rope Job, | " | 1.69 | 2.98 | 74 | 2.23 | 2.23 | 1.48 |
| 372 | Rope Samuel, | " | 1.48 | 2.97 | 74 | 2.23 | 2.23 | 1.48 |
|  |  |  | 7.77 | 15.55 | 3.88 | 11.66 | 11.66 | 7.77 |

$58.29

Received, August 30th 1844, of H. Deringer, $58 29/100 in full of above taxes.

DANIEL HARDING,
Treasurer.

These were followed by other entries from the transcript books of different treasurers of Luzerne county, to show that the taxes had been paid on the above tracts from 1848 to 1868 by Henry Deringer or his estate.

In regard to the tax receipts, William H. Todd testified: Was acquainted with Henry Deringer; married into his family; between the years 1838 and 1840 he asked me to examine his title-papers to his five tracts of land in this county; among them were tax receipts purporting to be from the treasurer of Luzerne county from the year 1826; these receipts contained the names of the five warrantees, Samuel Rope, Job Rope, Joseph Brown, Robert Brady and John Brady and John McGowan; these receipts were like this:—

[Coxe *v.* Deringer.]

Mr. Henry Deringer,

  In account with Luzerne County, Debtor for County and Road Tax as follows :—

| Acres. | Warrantee Names. | Township. | C. 1828 | 1829 | R. 1829 | Amount. |
|---|---|---|---|---|---|---|
| 400 | Brown Joseph | Sugarloaf, | $2.00 | $2.00 | $2.00 | $6.00 |
| 400 | Brady John | " | 2.00 | 2.00 | 2.00 | 6.00 |
| 400 | McGowan John | " | 2.00 | 2.00 | 2.00 | 6.00 |
| 400 | Rope Job | " | 2.00 | 2.00 | 2.00 | 6.00 |
| 372 | Rope Samuel | " | 1.86 | 1.86 | 1.86 | 5.58 |
| | | | | | | 29.58 |

Received payment per hands of Col. John Bittenbender—Jan'y 5th 1830, $29.58.

    Signed     Zurah Smith, Treasurer.

These receipts were in a bundle, and I examined every one of them. They were complete from 1826, except from 1844 to 1848.

Calhoun M. Deringer testified: Am the son of Henry Deringer; occasionally arranged my father's papers during the years from 1838 to 1840, and from 1847 to 1850; among the tax receipts were those for the lands in Sugarloaf township; there were tax receipts from 1826 to 1844; these papers were in a closet; I arranged them in different bundles; I examined these receipts particularly; opened every paper and endorsed the contents on the back; endorsed the receipts; they were signed by the different treasurers of Luzerne county; they embraced the years from 1826 to 1844, and subsequently there were receipts from 1849 to 1867, inclusive; the first receipt was a statement from the treasurer of Luzerne county to Henry Deringer, with the number of acres, warrantee names, rate of tax for 1827 and 1828, and receipt of treasurer; two years were embraced in each receipt; the date of the first receipt was, I think, the 10th of November 1828; last saw these receipts in 1868; my father died February 26th 1868; saw them just prior to his death; all the receipts from 1826 were in my father's sick room, except the four years I have spoken of; saw them next in December 1868; the title-papers were taken from a bundle and given to Mr. Hakes, and the receipts were left behind in the closet where kept; these papers in the closet were lost or destroyed; when we found trespassers on the land and this suit was brought, I went for these tax receipts to my sister-in-law in Philadelphia, in whose possession they were, and she told me that she had destroyed them; sent some of them up Second street as old paper; sold a barrel full as waste paper, and had burned some; my brother had told her they were of no use; that father owed no man a penny, and that she could do what she pleased with them; made search from some scattered papers she had sent to the factory; found a large number of papers there; sat up all night, and opened every paper; I found two receipts that were in that bundle for 1828 to 1830, inclusive—1827

1 Norris—16

[Coxe *v.* Deringer.]

to 1830, inclusive; I found three letters of Colonel Bittenbender, dated January, May and July 1829, respecting the payment of these taxes, &c.; I found the letter of Treasurer Zurah Smith, dated February 4th 1829; found the stubs of check-books in which were the margin of taxes paid for these lands by my father; have preserved all the papers that related to the Luzerne county lands, and have them here; I found the tax receipt in evidence (*supra*); also found another receipt; one previous to that from Treasurer Zurah Smith; I had that receipt here at the last trial, but it has been mislaid; that receipt was a statement for the taxes for 1827 and 1828, receipted by Zurah Smith; had the number of acres for each of the tracts Job Rope, Samuel Rope, Joseph Brown, Robert Brady and John McGowan; it had the county tax of 1827, and the road tax of 1828 and 1829, for each of the tracts carried out and the sum total of the five tracts added up and receipted at the bottom by Zurah Smith, treasurer; the amount was $32.08, and was dated about the 10th of November 1828; Colonel Bittenbender was an agent of my father.

Eliza Clark testified: Am the daughter of Henry Deringer; my father kept his business papers in a closet under the front stairs; I saw some of these papers the last time, during his last illness; they were tax receipts relating to these lands; I did not see them, but heard father dictating a letter to the treasurer of Luzerne county, in relation to the payment of taxes.

Mrs. Estalina Deringer testified: Was married to Bronaugh M. Deringer, son of Henry Deringer, in 1848; went to live in the old homestead property of Henry Deringer in 1868; these papers were in the closet under the front stairway at that time; Dr. Clark gave me the key of the closet, but I didn't disturb it until my brother-in-law, Theophilus, came to the house; I then asked him what disposition I should make of them. He told me that his father owed no man anything; that receipts were good for nothing after six years; that they were old receipts; that I might destroy them or do as I pleased with them; I had quantities of them burned; the balance were taken to the factory, and put in the loft; Calhoun Deringer called on me in reference to these papers, probably two years after they were destroyed, and I informed him they were destroyed.

Henry S. Gross testified: Married a daughter of Henry Deringer; had knowledge of his business papers from 1855 to 1868; saw the papers relating to the Luzerne county lands in 1855 or 1856, and last saw them in January 1868; I saw tax bills with receipts upon them as they came, from 1855 to 1868, every two years; I had charge of his papers, and thus saw them; saw tax receipts, deeds and letters from agents; Colonel Bittenbender was one; in 1868 saw all his tax receipts; they covered from 1827 to 1844; they were continuous, except an interval of four years; he paid his taxes every two years.

[Coxe v. Deringer.]

Frank Stewart testified: Am an attorney-at-law in Columbia county; in 1868 called upon Dr. Clark in Philadelphia, in regard to two tracts of land that Mr. Deringer claimed in his lifetime, and which I claimed; he unrolled papers that proved to be tax receipts upon five tracts of land, two of which I claimed; I examined them down to 1843, and I was satisfied they (the Deringers) had paid the taxes on them up to that date; receipts were from 1826 or 1827 to 1843; as he unrolled them and called them over, I took them in my hands and looked at them; they were signed by the treasurer of Luzerne county.

The plaintiffs here rested.

The defendants then gave in evidence:—

Application, June 13th 1793, for Samuel Rope tract in county of Northumberland.

Warrant, June 13th 1793, for Samuel Rope in county of Northumberland, 400 acres.

Survey, October 4th 1793, in pursuance of warrant to Samuel Rope, 372¼ acres and allowance.

Certified copy of William Gray's returns, including Samuel Rope, returned 28th April 1794.

Deed poll, March 1st 1794, Samuel Rope to William Steedman for Samuel Rope tract. Proved 19th October 1839.

Deed poll, September 31st 1794, indorsed on above, William Steedman to Tench Coxe for Samuel Rope tract. Proved in 1839.

Deed of assignment, March 20th 1801, Tench Coxe to William Tilghman, Abram Kintzing, Jr., Peter Stephen Duponceau and George Worrell, for all the lands of grantor, wherever situate, in trust for benefit of creditors.

Deed, Geo. Worrell, April 19th 1803, to Peter S. Duponceau and Abram Kintzing, Jr., for all his estate under former deed, under same trust.

Deed, September 1st 1823, William Tilghman to Peter S. Duponceau, for all his interest in said estate, under same trust.

Abram Kintzing March 9th 1822, to Peter S. Duponceau, for all his estate under trust deed from Tench Coxe, same trust.

Deed, June 9th 1828, Peter Stephen Duponceau to Charles Sidney Coxe for all his estate, &c., reciting conveyance, and conveying all the estate—same trust.

Admitted that Charles S. Coxe, Tench C. Coxe and Franklin Coxe are the heirs and legal representatives of Tench Coxe, deceased.

*Assessment Books for Sugarloaf Township for 1826 and 1827.*

1826—372 acres, Rope Samuel, commissioners, 1820 V. 372.

1827—372 acres, Rope Samuel, commissioners, 1820.

[Coxe *v.* Deringer.]

*Commissioners' Book of County Rates and Levies, 1826, '27 and '28.*
*Sugarloaf.*

1827—372 acres, Rope Samuel, V. 372, Tax 1.86.
Supposed for 1828,          372, Tax 1.86.
Under head of Reputed Owners, " Commissioners 1820, sold to
Henry Deringer in 1826."

*Commissioners' List to·Treasurer for 1826 and 1827.—Sugarloaf.*

372 acres, Rope Samuel, val. for 1827, $372, Co. Tax, 1.86.
Under head of Reputed Owners, " Commissioners 1820, sold to
Henry Deringer in 1826—Road tax for 1827, 1.86."

Deed 1828 Zurah Smith, treasurer Luzerne county, to John Bitten-
bender, Isaac Harding and William Swetland, Commissioners of
Luzerne county, for Samuel Rope tract, reciting sale for taxes
25th Nov. 1828.

*Assessment—Sugarloaf Township—Unseated Lands.*

1832—372 acres,          Rope Samuel,          Val. $372.
1833—372 acres,          Rope Samuel,          Val. $372.

*Commissioners' List to Treasurer of Unseated Lands for Taxes of 1832 and*
*1833—Sugarloaf Township.*

| Acres. | Valuation. | Warrantee Name. | Years. | Co'y Tax. | State. |
|---|---|---|---|---|---|
| 372 | 372 | Rope Samuel, | 1832 | 1.86 | .37$\frac{2}{10}$ |
|  |  | . | 1833 | 1.86 | .37$\frac{2}{10}$ |

Under head of Owners, " Charles S. Coxe, not paid."

Admitted that the Treasurer's Transcript Book for the years
1832 to 1837 inclusive, in which the treasurers made entries of
payment of taxes upon unseated lands, and the Treasurer's Sales
Book of 1834, are missing from the office, and were lost January
1841, and have never been in the office since.

1834, June 9th.   Deed, Benjamin A. Bidlack, Treasurer of Lu-
zerne County, to Charles S. Coxe for Samuel Rope Tract, con-
taining 372 acres, Sugarloaf Township.   Sold 9th June, 1834;
consideration $12.43.   Acknowledged 4th August 1834, in open
court.

Defendants then proved the payment of taxes by Charles S.
Coxe on the Samuel Rope tract from 1838 to the commencement
of this action, and gave in evidence the following entry in the
Commissioners' Transcript Book for the purpose of showing that
the taxes for non-payment of which the land was sold by the
treasurer to the commissioners on November 25th 1828, were not

[Coxe *v.* Deringer.]

paid by Henry Deringer until January 10th 1829, after the sale had taken place.

*Commissioners' Transcript Book, p.* 100.

HENRY DERINGER,
       TO LUZERNE COUNTY, DR.

| Acres. | Warrantee Names. | Township. | Years. | Co. | Rd. | Am't. |
|---|---|---|---|---|---|---|
| 400 | Brown Joseph, | Sugarloaf. | 1827 | 2 | 2 | |
| | | | 1828 | | 2 | 6.00 |
| 400 | Brady Robert, | " | 1827 | 2 · | 2 | · |
| | | | 1828 | | 2 | 6.00 |
| 400 | McGowan John, | " | 1827 | 2 | 2 | |
| | | | 1828 | | ·2 | 6.00 |
| 400 | Rope Job, | " | 1827 | 2 | 2 | |
| | | | 1828 | | 2 | 6.00 |
| 372 | Rope Samuel, | " | 1827 | 1.86 | 1.86 | |
| | | | 1828 | | 1.86 | 5.85 |

CR.          $29.58

10th January 1829, by cash, per J. Bittenbender, Esq.,     29.58

There was very slight evidence by either plaintiffs or defendants as to their occupation of the land or improvements erected thereon.

In rebuttal the plaintiffs put in evidence the following letter :—

Wilkesbarre, February 4th 1829.

Dear Sir :—Your letter of 30th January last came to hand. I have seen Mr. Myers ; he says the due bill you mention was given as part payment on the purchase of the five tracts of land, to wit:—

The amount here stated Mr. Myers says is all the moneys received by him, which appears by the books of the county was all he accounted for at settlement. If he is correct, there is still a deficit of the taxes of 1826, in-

| | |
|---|---|
| Jos. Brown, | $36.23 |
| John or Robert Brady, | 36.23 |
| Jno. McGowan, | 36.23 |
| Job Rope, | 36.23 |
| Samuel Rope, | 34.04½ |
| | $178.96½ |

asmuch as the taxes of twenty-six are not charged in the transcript of sale. The sale as appears of record charges the county taxes up to 1825, and the road taxes up to '24. The sale was made to you on the 8th day of July 1826, at which time the tax for 1826 could not have been due, and the taxes of '27 were not assessed. After the lands go out of the hands of the commissioners, they can no longer levy a tax for the road, wherefore you will save the road taxes from '24 to '27, when the same was again levied by the road masters. The receipt I gave to Mr. Bittenbender includes the county tax of 1827, and road taxes of 1827 and '28 ; though Mr. Myers is positive, I say he may be in an error, and if you have any vouchers to show the payment of the same for 1827, county or road 1827–28, otherwise than by the hands of Mr. Bittenbender, your money ought and shall be refunded. You say that

[Coxe *v.* Deringer.]

you have Mr. Myers's receipt for the taxes of 1827; if so, please forward me a duplicate of the same, which will set the matter at rest. It ought to be in the following form:—

| Acres. | Warrantee Names. | Township. | Co. 1826 | Co. 1827 | Rd. 1827 | Rd. 1828 | Amount. |
|--------|------------------|-----------|----------|----------|----------|----------|---------|
| 400 | Brown Joseph, | Sugarloaf. | | 2.00 | 2.00 | 2.00 | $6.00 |
| 400 | Brady Robert or John, | " | | 2.00 | 2.00 | 2.00 | 6.00 |
| 400 | McGowan John, | " | | 2.00 | 2.00 | 2.00 | 6.00 |
| 400 | Rope Job, | " | | 2.00 | 2.00 | 2.00 | 6.00 |
| 372 | Rope Samuel, | " | | 1.86 | 1.86 | 1.86 | 5.58 |
| | | Advertising, | | | | | 2.50 |
| | | | | | | | $32.08 |

The foregoing is a transcript copy which I gave Mr. Bittenbender, which shows the years and what taxes were paid by him.

Signed          Z. SMITH, Treasurer.

To Mr. HENRY DERINGER.

Plaintiffs then made the following offer:—

" Plaintiffs' counsel offer in evidence treasurer's sales book from 1828 to 1830 of Zurah Smith and S. D. Lewis, the witness on the stand, treasurers. This in connection with other entries of the same book of the same character, and like entries of same character in other books in the treasurer's office, in connection with the evidence of S. T. Lewis, Esq., who was treasurer of the county in 1830, and who succeeded Zurah Smith as treasurer and made entries in this book of similar character. This for the purpose of showing that the taxes of 1827 were paid before the sale, and that no sale of the Samuel Rope tract was made in 1828; and that the entry ' paid before sale' in said book opposite said tract was in pursuance of the custom of marking the payment of taxes which were made after the entry of said tracts in the sale book and before the day of sale; and that the tract so marked was not debtor to the county for taxes and could not be sold for taxes so appearing on the sale book. Also for the purpose of showing that a record of treasurer's sales was kept in 1828 and that no sale of the Samuel Rope tract appears thereon."

The defendants objected and the court ruled:—

" Objection to the evidence sustained, except that the treasurer's sales book of 1828 may be offered in evidence for the purpose of showing whether the treasurer made an entry of a sale at that time in that book or not. But for the purpose of showing whether it contains an entry of the payment of taxes prior to the sale, it is excluded; and for all other purposes generally excluded and the other evidence embraced in the offer also excluded."

The plaintiffs' and the defendants' counsel both excepted to the ruling of the court and at their request a bill was sealed for both.

To the extent admitted by this ruling the treasurer's sales book was then put in evidence.

[Coxe *v.* Deringer.]

The plaintiffs then made the following offer :—

" The court having admitted in evidence the entry made in the treasurer's sales book of 1828, relating to the Samuel Rope tract, solely for the purpose of proving that it shows no sale of this tract in that year, plaintiffs' counsel now offer the entire record of the treasurer's sales of 1828, for the purpose of showing how the record was kept by the treasurer in reference to other tracts which plainly appear to have been sold; for the purpose of showing to the court and jury, when taken in connection with other evidence already in the case, that no sale was made of the Samuel Rope tract in 1828, and further for the purpose of showing that in every instance where the entry ' paid before sale' appears, the record shows no sale of the tract to which such entry relates."

Defendants objected and the court ruled :—

" Objections overruled and the evidence admitted, except where entries of ' paid before sale' appear upon the treasurer's sales book of 1828 in connection with other lands, the offer is rejected, for the reason that any entries of tax paid before sale made in connection with other tracts cannot affect the Samuel Rope tract.    Counsel for plaintiffs and for defendants excepted to the ruling of the court, and at their request, bill was sealed for both."

During the argument of the counsel first speaking for the plaintiffs, defendants asked the court to withdraw from the jury the letter of Zurah Smith, treasurer, to Henry Deringer, of February 4th 1829, as evidence that the taxes of 1827 were paid to Treasurer Myers by Henry Deringer.

The court denied the request at that time for the reason that no evidence had been given of the payment to Myers, to which ruling defendants' counsel excepted and a bill was sealed.

Defendants submitted the following points, with which are given the answers of the court :—

4. That the parol evidence of the contents of alleged tax receipts destroyed, for the taxes of 1832 and 1833, fails to establish the material fact of the date of payment, and as there is no other evidence showing the date of such alleged payment to have been before the sale of 1834, such sale divested any title previously held by plaintiffs, and the verdict of the jury must be for the defendants.

Answer : " In the general charge, I explained the matter involved in this point as fully and as clearly as I could.    I said that if the jury found from all the evidence in the case that the taxes were paid prior to these sales, their verdict should be for the plaintiffs, but if they were not paid until after the sale, the plaintiffs could not recover."

5. That the parol evidence of the contents of lost instruments of writing must be of the most positive and unequivocal kind; and, as in this case, none of the witnesses testifying to the contents of the alleged lost receipts for the taxes of 1832 and 1833 have proved

[Coxe *v.* Deringer.]

the material fact of the date of such alleged receipts or attempted to give the contents thereof, such parol evidence is inadmissible to destroy the treasurer's deed of 1834, and the verdict of the jury must be for the defendants.

Answer : " You must be satisfied, gentlemen of the jury, that the taxes for those particular years mentioned in the point were paid before sale.

" We repeat, if you are satisfied from all the evidence in the case, not only that the taxes were paid, but paid before sale, then, to that extent, the point is negatived. The evidence must stand for what it is worth. The jury are to say whether it is satisfactory testimony, not only of the payment of the taxes, but of their payment within the required time."

6. That there is nothing in the letter of Zurah Smith, treasurer, dated February 4th 1829, from which the jury can find that the taxes of 1827 had been paid to the former treasurer, Myers, by Henry Deringer.

Answer : " We say in answer to that point, that so far as we can understand the letter of Zurah Smith, it seemed to be but a claim on the part of Mr. Deringer for something. It is not denied that the taxes for 1827 were paid by him, but it is alleged that they were not paid until the 10th of January 1829. Mr. Deringer, it would seem, had written a letter to Zurah Smith, in which there was some claim about something which had been paid by the former before that date. Zurah Smith replies under date of February 4th 1829. What does his letter relate to ? Does it relate to the taxes of 1827 or some other ? It is simply a controversy as to the exaction from Mr. Deringer of a larger sum on the 10th of January 1829, than the latter contended was due.

" It is not of itself evidence of the payment of taxes ; it goes to the jury for them to say what the meaning of it is."

The following are portions of the charge of the court :—

" [Gentlemen, before the commissioners were authorized to make that sale they were required under the Act of March 29th 1824, to advertise the tract for at least thirty days in all the newspapers then published in the county. They were required further to have handbills posted in at least six of the most public places of the county, giving the name of the tract, the place of its location, and the number of acres contained in it.

" Were these requisites performed on the part of the commissioners ? In determining that point, you may take into consideration the manner in which the lands were subsequently treated by the proper officers of the county. Upwards of forty-nine years have elapsed since that sale took place. Perhaps it would be too much to expect now explicit proof of the publication specified in the statute. The hand that printed the newspapers in the county at that day, as well as the hand that posted the notices spoken of

[Coxe v. Deringer.]

in the statute, are both now probably cold in death. The tongue that could have spoken to us advisedly in relation to these matters has been, perhaps, hushed for ever. It is your duty, however, to ascertain from the best evidence before you, whether' or not the requirements of the statute referred to were complied with. In doing this, you may consider the showing as exhibited by the books in evidence, as well those belonging to the treasurer's office as those kept from year to year under the direction of the commissioners.

" You have before you also the commissioners' deed in which the fact is recited that all the requirements of the statute had been observed. It has been shown, too, that taxes were assessed upon the land regularly from the year 1826 even down to 1868, not as though it belonged to the county, but as though it belonged to other parties. If, from a consideration of all these matters, together with the great lapse of time, you are satisfied that the commissioners complied with the requirements of the statute, then we say to you that their sale of the Samuel Rope tract, on the 8th of July 1826, and their subsequent deed of the 9th of June 1827 to Henry Deringer, vested in him the title. Up to this point there is no serious divergence between the views of the counsel on the one side and the other. Indeed, it is conceded that if the commissioners did their duty in observing the requirements of the Act of 1824, then there was a good title to the Samuel Rope tract vested in Henry Deringer by the sale and the deed referred to.]

["It was well said by the counsel for the plaintiffs that ordinarily when a treasurer makes a sale of land for taxes, he notes it upon his sale book. This book has been put in evidence, but, notwithstanding the common practice referred to, it does not show that any sale of the Samuel Rope tract took place in 1828. On the other hand, the treasurer's deed, duly executed and acknowledged, recites the fact of a sale having been made on the 25th November 1828. Again, the book has been put in evidence for the purpose of showing the general disposition which the treasurer made of this and other tracts at the time of his sales in 1828. The argument of the counsel for the plaintiffs is, that if the Samuel Rope tract had been sold, an entry to that effect would have been made by Zurah Smith, the treasurer, upon this book. The entry does not appear there, and they adduce the omission as one of the circumstances to corroborate their theory that no sale of the tract was made at that time.

" You are to consider carefully the evidence presented by the defendants in this connection. They have produced a deed which recites a sale, and which, unless you are satisfied that the tax was paid before that sale, would be good, and would divest the title of Henry Deringer, and his representatives now would not be entitled to recover. In the discussion of this branch of the case, reference has been made to a letter written by Zurah Smith. I may say here that the counsel, both for the plaintiffs and the defend-

[Coxe *v.* Deringer.]

ants, have apparently vied with each other in paying high compliments to the character of Zurah Smith; moreover, they say that he was a man of probity and a business man. It may be assumed then, for the purpose of this investigation, that he was that kind of a man. The letter seems to have been written February 4th 1829, and was therefore subsequent to the entry on the commissioners' transcript book of January 10th 1829. I have only to say of Zurah Smith and of John Myers, the treasurer who preceded him, and about whom the counsel on both sides have said much in the argument, that they were old men when I was a boy. I remember Zurah Smith and John Myers. They were excellent old men, but they were not infallible; they were like all other human beings, liable to make mistakes. And now that they are gone and the clods of the valley are over them, we are called upon to investigate their acts, and to deduce from them, if possible, what the truth is, in connection with those acts. I allude to John Myers, not because the evidence connects him with the case, but solely because his name has been so frequently mentioned in the argument of counsel on the one side and the other.

"When Zurah Smith wrote that letter, if the theory advanced by the plaintiffs' counsel be true, there had been dealt a staggering if not a fatal blow at this very title; and yet, it is argued, the probity of Zurah Smith is conceded on all sides, though he makes no allusion whatever at the time the letter was written to the fact of the lands having been sold. This is a circumstance competent for argument and competent for your consideration. In explanation of the course pursued by Zurah Smith, the plaintiffs' counsel further argue that there might have been a large body of deeds made out at this time, as was usual; and that this one might have been acknowledged through mistake, and afterwards come into the hands of the commissioners. Again, it is also argued that Zurah Smith continued to be the county treasurer until 1830; that his receipt is here for the taxes of 1828 and 1829; and yet when he executed and delivered that receipt to Mr. Deringer or his agent, if the views of the counsel for the defendants are correct, a destructive and fatal dagger had been sticking, for two whole years, in the very heart of Mr. Deringer's title. The plaintiffs' counsel ask how this is to be explained, if there had been such a sale as the defendants claim; how it is that Zurah Smith, who must have known of the sale, who made it, and who is conceded to have been an honorable man, continued to receive from Mr. Deringer the taxes continually accruing upon this land. It is for you to consider these circumstances, this most extraordinary state of things. You may also consider, in this connection, the condition of the records in relation to this alleged sale.]

["The plaintiffs allege, however, that the sale in 1834 was like the sale in 1828—a sale for taxes which had been previously paid by Mr. Deringer. And this would be so, if the testimony in regard to the showing exhibited by the bundle of receipts be correct. But

[Coxe v. Deringer.]

you must find further, I repeat again, not only that the taxes in question were paid, but *that they were paid before the sale of* 1834.

"The Supreme Court have said that testimony of this character was exceptional. It is, but it nevertheless is sometimes necessary.

"There may be, for instance, a dishonest official in yonder room to-morrow; there may be a conflagration in yonder city to-morrow, and the evidence of a valuable title may be swept out of existence.

"Shall people be deprived of their estate because these misfortunes occur? Misfortunes, too, that nobody can foretell or foresee. Manifestly not. But the jury must be satisfied under the evidence in this case that these receipts did exist, and that they covered the payment of the taxes claimed to be covered by them at the very times or dates spoken of. No man can be expected to swear that he examined every day and date, the crossing of every 't,' the dotting of every 'i.' He can say only that he saw the receipts, that he examined them and that they purported to be tax receipts for the years 1826, and, if you please, down to 1868; and further, that they purported to be receipts from the treasurer of the county of Luzerne. As I before remarked, the Supreme Court have wisely said that testimony of this character was exceptional; nevertheless, from the very necessity of things, cases will arise where it will be competent for the consideration of a jury. If you find, then, that the receipts spoken of by the Deringer family and by Mr. Stewart, did exist, covering the payment of taxes for 1832 and 1833, and that these taxes were paid before the sale in 1834, then that sale conveyed no title whatever; it was utterly valueless. If, on the other hand, you find that they did not exist, or that they did not show the payment of these taxes before that sale, then the sale of 1834 vested the title in Charles S. Coxe, and the plaintiffs are not entitled to recover."]

The verdict was for plaintiffs, and judgment was entered thereon.

Defendants took this writ, and assigned for error the admission of the testimony of plaintiffs to which the above exceptions were taken; the refusal to withdraw from the jury the letter of Zurah Smith; the answers of the court to the defendants' fourth, fifth and sixth points, and the foregoing parts of the charge in brackets.

*A. T. McClintock* (with whom was *Franklin B. Gowen*), for plaintiffs in error.—All the questions presented by this record may be considered under the following four legal propositions:—

1. That a plaintiff in ejectment, claiming under a commissioners' sale, must show a compliance with the preliminary requisites of the Act of 29th March 1824, and that where no possession of the land has been held by the plaintiff, and the defendant has not been derelict, no presumption in favor of the plaintiff's title arises, either from lapse of time or from payment of taxes.

2. That neither any entry, nor the absence of any entry, in the treasurer's sales book of 1828, nor the letter of the treasurer, dated

[Coxe *v.* Deringer.]

February 4th 1829, was competent evidence to prove that no sale took place on November 25th 1828, or to contradict or invalidate the treasurer's deed, made in pursuance of such sale.

3. That parol evidence of the contents of lost tax receipts is inadmissible to invalidate a treasurer's deed, unless such parol evidence establishes the material fact that the taxes were paid prior to the sale.

4. That if the taxes of 1827 were not paid until after the sale of November 25th 1828, a perfect and valid title passed to Charles S. Coxe by the treasurer's sale of 1834, whether the taxes of 1832 and 1833 were or were not paid prior to that sale.

First proposition: The curative provisions of the Act of 1815 do not apply to a sale by the commissioners under the Act of 29th March 1824: Jenks *v.* Wright, 11 P. F. Smith 410. Hence, the maxim *omnia præsumuntur*, &c., cannot be invoked to cure the defect. No possession of the tract had ever been taken or held by the plaintiffs, who, offering no evidence of compliance with the statute, had nothing to rely upon to raise a presumption in their favor except the recitals in the commissioners' deed, lapse of time and payment of taxes. But the recitals in a commissioners' deed are not evidence against the owner of the land. Lapse of time raises no presumptions in favor of title, except in case of long-continued possession; and payment of taxes cannot make title to land. In Hoffman *v.* Bell, 11 P. F. Smith 444, where taxes had been paid for forty years under a tax title, the deed of which was executed by the treasurer after his term of office had expired, and where the warrantee neither paid taxes nor made claim to the land, it was held that the payment of taxes raised no presumption in favor of the holder of the tax title. "Mere lapse of time proves nothing in favor of a title, for the older it is without any claim being made under it, the weaker it is:" Alexander *v.* Bush, 10 Wright 62. All presumptions from lapse of time are in favor of the party in possession: Hillary *v.* Waller, 12 Ves. Jr. 239, and cases there cited.

Second proposition: To sustain the verdict, these legal propositions must be established, which, it is submitted, need only be stated to reverse this judgment: 1. A purchaser at a tax sale who pays the purchase-money and receives his deed, takes nothing by his purchase, if the treasurer omits to note the sale upon his sales book, or records the sales of other tracts in a manner different from that of the tract in question; and, 2. A purchaser of a good title at a treasurer's sale will lose his land, and have his deed taken for naught, if at any time subsequent to his purchase the treasurer holds any communication with the prior owner without informing him of the sale.

Third proposition: No case can arise more clearly showing the danger of the extension of the ruling of McReynolds *v.* Longenberger than the present. The legal point raised here is as to the sufficiency of the proof of payment of the taxes of 1832 and 1833.

[Coxe v. Deringer.]

No attempt was made to fix the date of such payment. No single witness testified that it was before the sale of 1834. Has it ever been held that a sale for taxes can be defeated by simple proof of payment of taxes without regard to whether they were paid before or after the sale? Would a deed be defeated by offering the receipt of the treasurer for the identical taxes if such receipt was without date and no evidence was offered to prove the date of payment? If there is any presumption that the owner of the land has discharged his duty by paying his taxes, it is overthrown by the counter one that the officers did not violate theirs by selling it without warrant: Ankeny v. Albright, 8 Harris 157. It must therefore follow that where there is nothing in the case but the deed on one side and the fact of payment on the other, the presumption must be in favor of the deed.

Fourth proposition: The treasurer sold the Samuel Rope tract in 1828 to the commissioners. While it was yet in their hands it was again assessed, and after the five years had expired without redemption, it was sold by the treasurer in 1834 to Charles S. Coxe. Now if the taxes of 1827 were not paid before the sale of 1828, no redemption of that sale having been made, it followed, under the ruling of Diamond Coal Co. v. Fisher, 7 Harris 267, that a perfect title passed to Charles S. Coxe by the sale of 1834, whether the taxes of 1832 and 1833 were paid or not.

*Armstrong & Linn, Stanley Woodward* and *Clarence Deringer*, for defendants in error.—The case of Jenks v. Wright, 11 P. F. Smith 410, was a case where it appeared affirmatively, and as part of the case of the party claiming under the sale, that there had been no public sale, but an attempt to acquire title by a purchase from the commissioners at private sale. The case does not decide what amount or what kind of proof will be sufficient to establish the requisites. Here, in this case, was a deed made nearly fifty years before the trial; a recital in the body of the deed that the statute had been complied with; the records of the commissioners showing that after the sale they treated the land as not belonging to the county; the assessments in the name of Henry Deringer, the purchaser, and the payment of taxes by the purchaser for a long series of years. Under these facts and the ruling of the court in this case upon a former writ of error, can there be any doubt as to the propriety of the court submitting to the jury, as a presumption of fact, to find whether the requirements of the statute had been complied with? From the recitals in the deed a presumption of regularity in the sale arises: McCoy v. Michew, 7 W. & S. 386; Robins v. Bellas, 4 Watts 255; M'Henry v. M'Call, 10 Id. 456. The payment of taxes and the exercise of acts of ownership afford a presumption from which the jury may find that the sale was regular: Taylor v. Dougherty, 1 W. & S. 324; Hastings v. Wagner, 7 Id. 215. The maxim *omnia præsumuntur esse rite acta* applies with peculiar force

[Coxe *v.* Deringer.]

to tax titles: Cuttle *v.* Brockway, 12 Harris 147; Heft *v.* Gephart, 15 P. F. Smith 510; Alexander *v.* Bush, 10 Wright 62. The case of Hoffman *v.* Bell, 11 P. F. Smith 444, cited by plaintiffs in error, decides no more than that the payment of taxes *by a stranger* for twenty-one years will not raise a presumption that the owner has conveyed to him. It was an attempt to misapply the doctrine of Taylor *v.* Dougherty, 1 W. & S. 324. One of the vital questions in the case was, whether the taxes for the year 1827, for which it was alleged the tract was sold to the commissioners in 1828, were paid before the sale? As bearing upon this question, it was certainly competent to show the acts of the county officers, in relation to the sale of unseated lands in the county, occurring in that year, and especially their public acts which had special reference to the sales of the tract in question. A public sale by the treasurer in the manner directed by law is essential to the validity of a conveyance by him and an important element in the title of the purchaser, and therefore the records kept by the treasurer, and especially his sale book, may be given in evidence by either party for whatever it is worth. That a deed was made in this case by the treasurer to the commissioners was shown by the production of the deed itself, but there was no evidence of a sale made to warrant the execution of the deed, which can amount to no more than secondary evidence at best, and could only be received, if at all, to show a sale after showing the loss of primary proof. It was competent, therefore, for defendants to show that the treasurer kept a record of his sales made in 1828, and that the book showed no sale of the Samuel Rope tract, which was a circumstance to be submitted with other facts to the jury. The records kept by the treasurer are evidence of what therein appears: 1 Greenl. on Evidence, sect. 483; Foust *v.* Ross, 1 W & S. 507; Bratton *v.* Mitchell, 7 Id. 259; Cuttle *v.* Brockway, 12 Harris 145. The treasurer being a public officer, an entry made in a book kept by him of an official act may be given as evidence of what it contains: Overseers of Lewisburg *v.* Overseers of Augusta, 2 W. & S. 65–69; Dikeman *v.* Parrish, 6 Barr 210, 221; Kennedy *v.* Daily, 6 Watts 271. In an action of ejectment, tax books and receipts for taxes are evidence: Lewisburg *v.* Augusta, *supra;* Vastbinder *v.* Wager, 6 Barr 339; Fager *v.* Campbell, 5 Watts 287. The error of the officer will not deprive the owner of his land: Dougherty *v.* Dickey, 4 W. & S. 146; Fager *v.* Campbell, 5 Watts 288; Baird *v.* Cahoon, 5 W. & S. 540; Bayard *v.* Inglis, Id. 467. A recital in a treasurer's deed for unseated land is not conclusive evidence of the fact, but may be shown to be erroneous by the sales book and parol evidence: Turner *v.* Watterson, 4 W. & S. 171. The proof of the lost receipts and the other evidence offered was such evidence as it was proper for the court to submit to the jury to find whether the taxes upon which the sales of 1828 and 1834 were founded were paid before sale. See opinion of this court in former argument of this case, 28 P. F. Smith 271, and the following cases: Alexander

[Coxe v. Deringer.]

v. Bush, 10 Wright 62; Iddings v. Cairns, 2 Grant 88; Bartholemew v. Leech, 7 Watts 472; Devor v. M'Clintock, 9 W. & S. 80; Lackawanna Iron Co. v. Fales, 5 P. F. Smith 90; Laird v. Hiester, 12 Harris 452; Wells v. Smyth, 5 P. F. Smith 159; Greenough v. Fulton Coal Co., 24 Id. 486; Longenberger v. McReynolds, 7 Id. 23; same case, 25 Id. 13; Reynolds v. Richards, 2 Harris 208; Tanner v. Hughes, 3 P. F. Smith 289; First National Bank v. McManigle, 19 Id. 156; Woodburn v. Farmers' and Mechanics' Bank, 5 W. & S. 450. That the books and records kept in the office of the commissioners and treasurer, and what therein appears touching the tract in dispute, may be given in evidence for the purpose of showing the payment of taxes before the sale, we shall refer to: Fager v. Campbell, 5 Watts 287; Kennedy v. Daily, 6 Id. 269; Russel v. Werntz, 12 Harris 337; Laird v. Hiester, Id. 452; Overseers of Lewisburg v. Overseers of Augusta, 2 W. & S. 67–69; Dikeman v. Parrish, 6 Barr 210; Foust v. Ross, 1 W. & S. 501; Vastbinder v. Wager, 6 Barr 339; Ankeny v. Albright, 8 Harris 157.

Chief Justice AGNEW delivered the opinion of the court, October 10th 1876.

It will be sufficient to consider the four propositions presented by the plaintiffs in error, instead of discussing the specifications of error in detail.

The first proposition cannot be sustained. There were facts to be submitted to the jury on the question whether the requirements of the Act of 29th March 1824 had been complied with by the commissioners, in making the sale to Henry Deringer of June 5th 1827. There had been no *actual* possession of the Samuel Rope tract until very recently. Henry Deringer had paid the taxes regularly on this tract, with a slight exception, for nearly forty years. It is not the case of one setting up payment of taxes against another in actual possession, exercising rights of ownership under a claim of title. The payment of taxes will not stand for actual possession to support a title under the Statute of Limitations, but it is an assertion of title of a decided character, so much so it will extend even a tortious possession, beyond the *pedis possessio* of a trespasser: M'Call v. Neely, 3 Watts 73; Heiser v. Riehle, 7 Id. 37; Criswell v. Altemus, Id. 580. It was said in our former opinion, the county being the owner of the land the commissioners conveyed, the deed of June 5th 1827 recited the performance of the directions of the act, and this sale has never been impeached by the county. The conclusion then stated was that the facts were for the jury, upon the question whether the directions of Act of Assembly had been complied with. Opinion of WOODWARD, J., Coxe v. Deringer, 28 P. F. Smith 271. In Jenks v. Wright, 11 P. F. Smith 410, there was direct and positive proof that the sale was private, and the act not pursued. So in Hoffman v. Bell, 11 P. F. Smith 444,

[Coxe *v.* Deringer.]

the deed was made after the treasurer had gone out of office, and therefore without authority. In no case has it been decided that the party claiming under a commissioners' deed must prove the prerequisites of the sale positively under *all* circumstances. Natural presumptions arising from clearly proved facts which lead to a belief that the directions of the law have been fulfilled, must be submitted to a jury in this as in other cases.

The second proposition is sustained on the ground of the insufficiency of the evidence to overturn the fact of the sale set forth in the treasurer's deed of 1828 to the commissioners. This fact lies at the foundation of the title of the county, of which the primary evidence is the deed itself. There are some recitals in a treasurer's deed, which are only secondary evidence, and where, to support a sale, the recitals may be corrected by the original documents from which the recitals were derived: Turner *v.* Watterson, 4 W. & S. 171. But a sale is an independent fact in itself, not necessarily the subject of an entry in an original document, unless it happens to be made voluntarily by the treasurer. The law requires no entry of it. The sale is itself an original act, done *in pais*, or, as it were, out of doors, and in point of time follows all the documentary entries relating to the tax for which the sale is made. It has nothing original to be referred to, by way of correction. Hence the treasurer's deed is the primary and best, and, it may be, the only evidence of the fact of a sale. The sale is a necessary act, without which no deed can be made. The deed, when delivered, is therefore the proper evidence of the sale set forth in it, and cannot be avoided by loose and inconclusive evidence that no sale was made; nothing less than clear and strong evidence of no sale being made should be permitted to overturn the solemn deed of the officer of the law. Any other rule would render tax titles very insecure.

This deed is found in the possession of the defendants over forty years after its date, and is given in evidence by them at the trial. No objection is made to the deed itself for any defect on its face, and no evidence was given to prove non-delivery to the commissioners or that they came to its possession surreptitiously. On the contrary, it came before the jury with the ordinary *indicia* of delivery, which, in the absence of countervailing proof, are legally sufficient according to the following cases: Blight *v.* Schenck, 10 Barr 285; Rigler *v.* Cloud, 2 Harris 361; Stinger *v.* Commonwealth, 2 Casey 428. Justice SHARSWOOD, remarking upon the case of Blight *v.* Schenck, said that "it recognised the doctrine that where an instrument is found sealed and delivered and there is nothing to qualify the delivery but the keeping of the deed in the hands of the executing party, nothing to show that he did not intend it to operate immediately, it is a valid and effectual deed and that delivery to the party who is to take by it or any other person for his use is not essential:" Pennsylvania Co. for Insur-

[Coxe *v*. Deringer.]

ance, &c., *v*. Dovey, 14 P. F. Smith 267. This case does not need the doctrine of that case. Here we have not only the signing, sealing and acknowledgment, but possession by a subsequent purchaser under a tax sale of 1834, to whom it would be probably delivered by the commissioners, who suffered the land to be sold for the taxes of 1832, 1833, assessed in his name. But it is not necessary to strengthen the presumption of delivery, for both the plaintiffs and the defendants in error have argued the case as one of a *delivered* deed, and that the purpose of the evidence was to show that there was *no sale* to support the deed.

This brings us to the sufficiency of the evidence relied on. The first two facts on which most reliance is placed are that the treasurer made entries of the sales of other tracts at the same time, and made none of the sale of this tract. What then is the fact itself as to the Samuel Rope tract, the only one we are concerned in, and what is the value of the fact? The fact is simply an omission—a failure merely to make an entry; and its value uncertain. Was it a failure of inadvertence or of intention? Was it a slip of memory, or because no sale was made? Who can say with certainty? The treasurer has made no entry of a sale, but will this fact overturn a sale he alleges he made, and which he has consummated in the most precise form, by a deed solemnly executed and delivered, under the responsibility of his office and the sanction of his oath? Surely a solemnly affirmed act cannot be blown away by such a breath as this. Still worse and weaker are the next two facts relied on, viz.: that the treasurer on the 4th of February 1829 wrote a letter to Henry Deringer and did not mention that the land had been sold to the commissioners in 1828, and that afterwards he received the taxes of 1828 and 1829 of Deringer, and said nothing of a sale in 1828 for the taxes of 1827. If Zurah Smith, the treasurer, were a party to be affected by his own acts or omissions there would be room for argument. But after the sale of 1828, he had no power whatever, by acts or declarations, much less by mere omissions, to impair the deed he had before solemnly and officially executed and delivered. The title under that deed was not to be withered by his breath, or his omission to speak of that which did not concern him. Frail, indeed, would be the tenure of any purchaser under such a deed, could such evidence be used half a century afterwards to stifle its voice. Of the same character are the omissions of the commissioners to perform the subsequent duties devolved on them by the Act of Assembly. Such irregularities are unfortunately too frequent. And what makes the error of the court more hurtful was the language and tone of the charge upon these weak and inconclusive facts. Referring to the letter of February 4th 1829, the judge said: "When Zurah Smith wrote that letter, if the theory advanced by the plaintiffs' counsel be true, there had been dealt a staggering, if not fatal blow at this very title," and referring to

1 NORRIS—17

[Coxe *v.* Deringer.]

Smith's receipt for the taxes of 1828–29, he said : " And yet when he executed and delivered that receipt to Mr. Deringer, or his agent, if the views of the counsel for the defendant are correct, a destructive and fatal dagger had been sticking for two whole years in the very heart of Mr. Deringer's title." The language of hyperbole is suited to the purpose of the advocate, who would enforce his thought by striking and intense expressions, in order to deepen its effect, and by the exaggeration lead the minds of his hearers into the fever of his own heated fancy. But weak and inconclusive facts when thus presented by a judge can only mislead. Jurors catching the tone and temper of their conclusions from the strong and figurative style of the judge, fail to give to the facts their true weight which a cool and fair statement is calculated to produce. There is clear error in the tenth specification.

The third proposition of the plaintiffs in error cannot be sustained. There was such evidence of the time of the payment of the taxes of 1832 and 1833 as was properly submitted to the jury. It came from several witnesses, not being confined to C. M. Deringer. It appeared that the receipts were continuous and complete, in biennial periods, from the year 1826, until the year 1844, a lapse intervening then for four years ; and beginning again in 1849 they continued in the same manner until 1868. They were regular in their form, character and time of payment early in the year. An illustration of their form, &c., was given in the receipt of January 5th 1830, viz., a statement in transcript form of the five tracts belonging to Mr. Deringer, giving the names, quantities, localities and taxes for each tract for the two preceding years, summed up together, and a receipt at the bottom for the entire amount, with date. This precise, methodical and regular payment of the taxes on all the five tracts early in the year was strong evidence of Mr. Deringer's punctuality. It proved his deep interest in the subject, which was not likely to fail in performance of his duty to protect himself. It was a very natural conclusion that a man who always paid his taxes promptly in biennial periods, previous to the time of sale, would have paid them in time in 1832 and 1833. This, therefore, was a question for the jury and not the court. Yet we are not unmindful of the necessity of holding a party to strict proof of the *time* of payment, when its purpose is to defeat a tax sale. The doctrine of McReynolds *v.* Longenberger, 7 P. F. Smith 13, ought not to be carried beyond its fair import. No question arose in that case upon the sufficiency of the evidence as to the *time* of payment, as shown in the receipts which had been destroyed; and indeed no objection was taken to the deposition on the score of time. The questions in this court arose upon the exclusion of parts of the deposition of the person who was the administrator of the owner, who had testified to the finding of the tax receipts in their proper place among the muniments of the owner's title ; and the

[Coxe v. Deringer.]

points decided were that on proof of their destruction by fire, and of their apparent official character, and the lapse of time since their dates being over thirty years, the evidence of their existence, character and possession was competent, in order to receive proof of their contents. The chief question was whether such instruments, when accompanying the possession and title of the land, proved themselves after a lapse of thirty years. What would have been their effect had the deposition been read and no other evidence of the time of the payment of the taxes than the mere years for which the taxes were assessed had been offered, was not determined. We make these remarks to guard against any inference that we now mean to give that case a wider range than its true character imports.

As this judgment must be reversed for error under the second proposition it is unnecessary to consider the alleged contradiction, stated in the fourth proposition, between the answers of the court to the defendants' first and third points, and that part of the charge asserting that the sale of 1834 was valueless, if the taxes for 1832 and 1833 had been paid by Mr. Deringer. No such contradiction need take place in a future trial.

Judgment reversed, and *venire de novo* awarded.