## M'Coy *against* Michew.

In an action of ejectment in which the party claims under a treasurer's deed made in pursuance of a sale of the land as unseated, he may give in evidence a patent for the land in the name of the person as whose it was taxed and sold, without previously showing a regular chain of title to him from the warrantee The patent is such evidence of ownership and identity of the land as will justify the commissioners in taxing and selling it in the name of the patentee.

It is not a good objection to a commissioners' deed for unseated land sold for taxes, that it does not set out how the land was sold, whether at public or private sale; the presumption is, until the contrary be shown, that it was sold according to law. Nor is it a good objection that it was acknowledged before a Judge of the Court of Common Pleas.

A draft of the unseated lands of a county, made under the authority of the commissioners, partakes of the nature of a public document, and may be given in evidence in an action of ejectment to identify the land taxed and sold.

If a tract of land held upon a warrant and survey be covered by two or more warrants and surveys of a later date, and the land be assessed, taxed and sold by the treasurer at different times in the names of the later warrantees, such sale will confer a good title upon the purchaser for such portion of the land as is thus taxed and sold.

ERROR to the Common Pleas of *Luzerne* county.

This was an action of ejectment for a tract of land containing 294 acres, by William M'Coy against James Michew and others. The plaintiff claimed under and gave in evidence a warrant to George Cristy for 300 acres, dated the 4th February 1774, and survey thereon of 294 acres, dated 26th May 1774, regularly returned; this title was regularly vested in the plaintiff.

The defendants claimed under a warrant and survey in the name of Peter Smith, dated in 1784; also under a warrant and survey in the name of John Thornburg, dated in 1793; also under a warrant and survey to John Kunkle, dated in 1793: each of these warrants and surveys covered a part of the land originally surveyed on the plaintiff's warrant in the name of George Cristy, and altogether covered the whole of Cristy's survey but about 13 acres. After the defendants had given these several warrants and surveys in evidence, he offered a patent to Nicholas Kern, Jun. for a tract of land containing 159 acres 70 perches, and which described the Peter Smith tract; to be followed by evidence of a regular assessment and sale of it in the name of Nicho-

[M'Coy v. Michew.]

las Kern, Jun. as unseated, for taxes. The plaintiff objected on the ground that no previous title was shown to be in Nicholas Kern, Jr.; but the court overruled the objection and sealed a bill of exception. The evidence was then given of an assessment and sale of this tract to the commissioners. The defendants then offered a deed of the commissioners upon a sale of the same tract to Orlando Porter. The plaintiff objected, because the deed did not show that it had been made in pursuance of a public sale, and because it was not acknowledged before a justice of the peace as the law requires, (the acknowledgment was before a Judge of the Common Pleas), and because it was not proved that the grantors were commissioners. The court overruled the objections and sealed an exception.

The defendants further offered in evidence a draft of the unseated lands of Luzerne county, made under the direction of the commissioners in the year 1816, for the purpose of identifying the land in question. The plaintiff objected to its admission, but the court overruled the objection and sealed a bill of exception.

The evidence given exhibited regular sales of the several tracts warranted in the names of Peter Smith, John Thornburg and John Kunkle, by the treasurer, for taxes. The sales were made at different times.

The plaintiffs contended " That the sale for taxes, at different times, of several distinct tracts of land, which interfere with and cover in different proportions an older and better survey, does not devest the title of the older survey, either in part or in whole."

CONYNGHAM (President) instructed the jury that this position of the plaintiff's counsel was not tenable, and directed the jury that the plaintiff was not entitled to recover.

*M'Clintock* and *Butler*, for plaintiff in error.
*Dana* and *Tilghman*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—This is an action of ejectment to recover 294 acres of land under a warrant in the name of George Cristy, dated the 4th February 1774, and a survey dated the 26th May 1774. A regular chain of title is given in evidence from Cristy to the plaintiff, William M'Coy. At the trial the defendants took two grounds of defence: first, they denied that the Cristy warrant and survey covered the land in dispute; and next, granting that it does, and that the title was at one time in M'Coy, they contend that it has been devested by divers sales at different times for taxes, viz., by a treasurer's sale for 159 acres 70 perches, returned by the assessor in the name of Nicholas Kern; another portion in the name of John Thornburg, and the remainder in the name of John Kunkle. These sales covered the whole land in controversy, with

the exception of about 12 acres, for which the jury found a verdict in favour of the plaintiff.

After the verdict in favour of the plaintiff for part of the land not covered by the title, to which I have referred, we must take it that the George Cristy warrant and survey was located on the land in dispute, and that the title to the same was at one time vested in the plaintiff. The only inquiry, therefore, that remains is the second ground of defence, viz., whether the title has been devested by subsequent sales for taxes.

On the trial, the defendants gave in evidence, among other things, a warrant dated 1st July 1784, to Peter Smith, for 300 acres, and a survey thereon, dated 9th October 1793; a warrant to John Thornburg for 400 acres, dated 13th June 1793, surveyed the 3d October 1793; and also a warrant to John Kunkle for 150 acres, adjoining Jacob Eberly and others, dated 13th December 1793, surveyed the 11th March 1794.

The defendants then offered a patent, dated the 1st April 1797, to Nicholas Kern, for a tract of land called " Chance Medley," to which the plaintiff objected; but it was admitted by the court, without the recitals, to show the description of the land in the name of Nicholas Kern, which land was intended, and which was subsequently sold for taxes. The patent was admitted, we think, properly, in connection with the offer of the defendants to prove that the same land had been sold in the name of Nicholas Kern for taxes. It was admitted, not as evidence of title, but for purposes of description and identity. The patent was evidence as a grant of the land by the Commonwealth, thereby showing the title out of the Commonwealth and in Nicholas Kern, and of course liable to taxation in his name. So far as the Commonwealth was concerned, he was the owner of the tract, and it would be only necessary to produce the patent as evidence of title, it not being required that a survey should be shown.

In the second and third bills, the plaintiff also objected to the deeds of George M. Hollenbach, treasurer, &c. to the county of Luzerne. They except to the deeds, because they do not state the time the tax remained unpaid, and because no survey has been shown; the answer to which is, that the deeds are in the very words of the Act, and because, as has been already stated, for the purpose for which they are offered, it is not required that a survey should be proved. The patent is evidence of such ownership as will justify the commissioners in taxing the land in the name of the patentee; and calling him, in the assessment, warrantee, instead of patentee, will make no difference, provided (of which there can be no doubt) it is the same land that is assessed.

The fourth bill contains the objection to the deed of the commissioners of the county to Orlando Porter.

It might be sufficient to observe, in answer to this exception, that whether this deed was properly or improperly admitted, is

totally immaterial, as it was only necessary for the defendants to prove title in a third person. But we think there is nothing in the objection. The presumption is, until the contrary is shown, that the property was sold according to law; and it is not required to state in what way it was sold, whether at public or private sale. And although the Act does say that it shall be acknowledged before a justice of the peace, yet the President Judges of the several judicial districts have a general authority to take the acknowledgment of deeds, and under this power the acknowledgment in question was taken. The Act was not intended to curtail the general powers of the several Courts of Common Pleas, or of the President Judges; but to give to the justices of the peace a power, which they did not before possess, of taking such acknowledgments.

We are further of the opinion that the court was right in admitting the county draft, which partakes of the nature of a public document, made under the authority of the commissioners, and is evidence of the identity of land taxed in the name of Nicholas Kern. The remaining bills of exception, seven in number, depend upon the same principles, and require no further notice.

Next, as to the charge. The court was asked to charge the jury "That assessments for taxes upon unseated lands can only be legally made by the commissioners, and the return of the assessors is not evidence of the assessment; and that the defendants not having shown an assessment of taxes made by the commissioners upon the land sold by the treasurer, no title vested in them by such sale." The court, in answer to this point, made a correct and proper discrimination; for while they admit the legal proposition to be correct, they deny the facts to be as stated. The evidence and the charge show that the books were given in evidence without objection, and were conceded at the time to be the books and public records from the commissioners' office; the examination of the clerk as to their authenticity being waived. They were read to the jury as the assessment-books, and afterwards the deed from the treasurer to the commissioners was given in evidence, without any objection on any ground connected with the assessment, although they were opposed, for reasons which have been already stated. After this concession, which was made without any qualification, it would be a surprise upon the defendants, who had reason to believe they had dispensed with any further proof on the subject, to make the difficulty that the charge of the tax was not made by the commissioners, and that some other book must be produced, showing that the charge was made by them. There is, besides, as the court justly say, no evidence of the existence of any other book of this kind; and we are not at liberty to presume there were others, after the concession of counsel that the documents given in evidence were the records of the commissioners' office. The concession must in all fairness be

[M'Coy v. Michew.]

taken to mean that they were all the records of the office. The assessments given in evidence contain the return of the tract with its valuation, and moreover a charge of a tax which no one but the commissioners can make. The treasurer's deed also recites the due imposition of a tax. After this, as the Judge justly remarks, it would be too much to expect the jury to presume that the assessment of the tax was not made by the commissioners, but by the assessor, or by some other person without authority. As we find in the records of the commissioners' office a book containing a regular return of the tract for assessment, and an assessment of a tax upon its face, the presumption is that the respective duties were performed by the proper officers; that is to say, the return and valuation was the work of the assessor, and that the tax was duly imposed by the commissioners.

But the exception upon which the case principally turns is the answer to the eighth point. The court was requested to charge the jury " That the sale for taxes, at different times, of several distinct tracts of land, which interfere with and cover in different proportions older and better surveys, does not devest the title of the older survey, either in part or the whole." The court refused to answer as requested, for reasons perfectly satisfactory, and which I adopt : " The objection to the validity of the sale is that the commissioners have assessed and sold several parts of one undivided tract, and that the sale is void. In 1815, 1816 and 1817, the commissioners called on the deputy-surveyor to plot for the county a map of all the different warrants in the county, to be made as well from known surveys, as from information procured from the landholders. A map is made locating the different surveys correctly, as is supposed by all the officers. They assess, by the names of the warrantees or supposed owners, entire tracts, and from these tracts collect a portion of the county rates and levies required to sustain the public interests. On this depend the rights of the defendants, who are purchasers of the land so sold to sustain the public burthens. And who are the persons who object to the proceedings? The landholder, whose duty it was in the year 1805 to furnish the commissioners the very information which would have prevented the alleged difficulty, but who, it appears, neglected it for upwards of thirty years, when knowing, or, what is the same thing, bound to know, that his land was liable for its proportion of the public burthen, neglects or refuses to pay the tax assessed, and suffers his land to be sold, and then, after this long neglect, when the land has risen in value, seeks to destroy a title which accrued in consequence of his failure to perform a duty which the law has imposed upon him. And the ground upon which he rests the claim is an alleged error into which the commissioners were led in the honest endeavour to perform a duty by the want of information which he was bound to communicate. Under these circumstances, if the proceedings are

[M'Coy v. Michew.]

to be considered in any respect defective, it is nothing more than an irregularity which, under the Act of 1815, is cured.    To decide otherwise, would be holding out a premium to reward the careless and the negligent.    It must be observed that it is land, and not the owner, that is taxed; and if the holder of unseated land neglects or refuses to perform a duty which the law requires of him, and the commissioners, acting upon the best information they can obtain, ignorant of the older warrants, tax later warrants covering the whole or part of the same land, assessing and selling whole tracts according to the later surveys, the title of the land included in these later surveys will pass, although it be discovered eventually that the later surveys lap irregularly on the older ones, and each tract takes a portion of the older tract.    Thus, in the case before us, the sale of the Thornburg tract passed the title to the part covered by that warrant; and the sale of Kunkle and Kern passed their proportions in the same manner."    This view of the case is sustained by *Stough* v. *Shoemaker*, (1 *Watts & Serg.* 166), and *Harper* v. *M'Keehan*, (3 *Watts & Serg.* 228).    It matters not whether it covers the whole or a part of the older survey, as the effect of it is to pass all that portion which it includes.    It is said that although a party may neglect to pay his tax, he has two years to redeem his land, that this construction would deprive him of this privilege.    This is not so, for he has still a right to redeem, although it be upon payment of the whole tax on which the land is sold.    Nothing less will entitle him to redeem, and this is rendered necessary from the inconvenience which would result from an attempt to apportion the tax.    If there be hardship, it is one which can easily be avoided by performing the duty which the law imposes upon him, to return the land and pay his taxes.

Judgment affirmed.