# Stark *versus* Shupp, *et al.*

112  395
f197  527

1. A treasurer's sale of lands for a tax assessed jointly on real and personal property is void.

2. In order to establish a right to possession of seated land under a tax title for the same, the plaintiff must show the treasurer's authority to make the sale. To this end it must be shown that all material conditions and perquisites have been complied with; as that a tax had been duly assessed upon the property by the proper officers, that such tax had not been paid, and that sufficient personal property could not be found on the premises out of which it could have been collected.

March 17th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas of *Wyoming county :* Of January Term, 1886, No. 148.

Ejectment brought by George W. Stark against E. J. Shupp and S. A. Shupp for about one hundred acres of land in Lemon township, Wyoming county. Plea, not guilty.

The following are the facts as they appeared on the trial before SITTSER, P. J.:

Plaintiff's title is founded on a tax sale made by the treasurer of Wyoming county on the 12th of June, 1882. From

[Stark *v.* Shupp et al.]

1872 to 1877 Henry D. Beebe was in possession of one hundred acres in Lemon township under a contract. He resided in a house on the land until December, 1876, when he removed into an adjoining township, and the house was occupied until the spring of 1877 by his tenant. In December, 1876, the land was assessed to Bebee at $800, to which amount one ninth was afterwards added, making a total valuation $889, and a county tax levied thereon for the year 1877, at the rate of five mills on a dollar. Duplicate and warrant were issued to the collector of Lemon township, warrant being dated 20th April, 1877, containing among others the valuation and tax against Bebee, to wit: Valuation, $949; county tax, $4.75. The valuation included personal property valued at $60. The collector could find no property out of which to raise the tax, and in settling his duplicate in December, 1877, returned the land. E. S. Handrick bid off the land at tax sale, received from the county treasurer a deed therefor, and afterwards conveyed the same to George W. Stark, the plaintiff in this case.

At the trial in the court below, the plaintiff was not able to produce record evidence of the action of the county commissioners fixing the *rate* of taxation for 1877. The man who was clerk for the commissioners in 1877, and the assessor for Lemon township who made the assessment in December, 1876, were both dead. Plaintiff's counsel offered to prove that search had been made in the commissioners' office for the record of the action of the commissioners, fixing the rate of taxation for 1877, and that no such record could be found. Also that the commissioners met at their office prior to the 20th of April, 1877, and fixed the rate of assessment on all property in the county taxable for county purposes at five mills on a dollar; that their clerk was present with their records; that in pursuance of the rate of assessment so fixed, duplicates were issued to the collectors of the several townships, including the collector of Lemon township, containing the assessment of H. D. Beebe, as follows: "Valuation, $949; county tax, $4.75." That the commissioners' minutes for the year 1877, from January 4th until February 19th, had been mutilated and two pages removed therefrom after the 19th of February, 1877. The court overruled the several offers, and bills were sealed at the plaintiff's request, the court stating as follows; "The general rule is that where a record, or a deed, or a writing of any kind is lost or destroyed, parol evidence may be given of its contents. If it is alleged that the county commissioners by resolution fixed the rate, and that that was recorded in this book, and that the portion in which it was recorded has been lost or destroyed, we will allow parol evidence to be given of its contents, the same as we would in any other case. Of course.

in order to support a tax sale to seated land, it is necessary to show that it was assessed, and the assessment consists of two things, the valuation and the rate. The rate is to be fixed by the county commissioners by resolution, and such resolution must be recorded. If the county commissioners met and merely fixed a rate by word of mouth, no entry being made of it, no record kept of their action, it is not an assessment. The record of the county commissioners must show the rate, and we should treat this matter the same as any other question that comes before us, and if this record has been lost or destroyed, we will allow parol evidence of its contents to be given. There is no evidence of the loss of anything except one leaf from this book, containing pages 33 and 34. When it is offered to show that there was anything upon those pages material to this case, we will allow the evidence to be given, but as I understand it, that is not offered. If we should allow the evidence offered, then this would follow: that a party, anxious to maintain a tax title, by removing the leaf from the book would be able to establish it without any resolution ever having been entered upon the records at all, and thus be able to furnish the evidence to support that tax sale. We reject this evidence."

The plaintiffs except, and bill sealed.

Plaintiff having offered record of assessment, record of duplicates, parol evidence of Theodore Williams, one of the county commissioners for 1877, that the commissioners met in their office and fixed the rate of taxation in presence of their clerk, and having offered duplicate and warrant showing an assessment of five mills on a dollar on the valuation of Henry D. Beebe, the court below ruled that his offer failed to make out an assessment which would support his title, and instructed the jury to find a verdict for the defendants. To this instruction the plaintiff's counsel excepted. A verdict was rendered for defendants according to the instructions, and judgment entered thereon. The plaintiff thereupon took this writ, assigning for error the action of the court in rejecting his evidence and in instructing the jury to find for the defendants.

*Henry Harding* (*Frear* with him), for plaintiff in error.— If no assessments were made by the commissioners for 1877, by reason of no recorded resolution remaining in the office, the issuing of duplicates and collection of taxes for that year was illegal. The presumption that all things were done which legally ought to be done should have full force under the offer in this case.

The validity of a tax sale depends upon the fact of assessment

and not upon the record of assessment: Act 15th April, 1834, *supra.*

When the county commissioners fix the rate, they have done all the law requires them to do.    The terms, rates, and assessments are synonymous in law, and when the rate is fixed the assessment is made: Catlin *v.* Smith, 2 Serg. & Rawle, 270 *a.*

In Bratton *v.* Mitchell, 7 W. & S., 259, there was no evidence of fixing a rate, but a loose paper found in the commissioner's office, not in the hand writing of the clerk, and not signed, was held to be *prima facie* evidence of an assessment.

*William M. Piatt & Sons* and *Terry*, of *Terry & Streeter* *(John M. Garman* and *Streeter* with them), for defendants in error.—This case presents two interesting and important questions.

One is—Do the curative provisions of the Act of 13th March, 1815, relative to sales of unseated lands, extend and apply to sales of seated lands for taxes?

The other is—Can the *levy* of a tax by the county commissioners be proved by parol?

A tax sale is a thing unknown to the common law.    It is in derogation of the common law rights of the citizen.    A statute authorizing it must be strictly construed: Vanhorn's Lessee *v.* Dorrence, 2 Dall., 316 ; Potter's Dwarris on Statutes, 257 ; Blackwell on Tax Titles, *162.

The curative provisions of the Act of 1815 do not waive or dispense with any of the prerequisites of sale ; they dispense with proof thereof when the title to the land is being litigated. They affect the tenure of the purchaser rather than the conduct of the sale.

The 41st section of the Act of 1844 stops at the provision pointing out how the sale shall be made.

In Broughton *v.* Journeay, 1 P. F. S., 31, Chief Justice WOODWARD, after quoting the 41st section of the Act of 1844, says:

"As this is a summary mode of divesting an owner's title, and there is no curative provision for laches as in the Act of 1815, relating to sales of unseated lands, it is obviously necessary that the notice of the sale which the treasurer is required to give should be precise and full: " Hathaway *v.* Ellsbree, 4 P. F. S., 498; Jenks *v.* Wright, 11 Id., 410; Hess *v.* Harrington, 23 Id., 438 ; Emory *v.* Harrison, 1 Harris, 316.

2. When the tax is levied by a county, city, or other corporation, a record is invariably required to be made of the order.

In City of Philadelphia *v.* Miller, 13 Wr., 440, Judge AG-NEW says:

" Assessment is, from its legal requirement and the neces-

sity of preserving its evidence, a written entry, and must depend upon the records of the commissioners' office, and not upon parol testimony:" Goodman v. Sanger, 10 Norris, 71; Kitchen v. Smith, 5 Out., 452; Cooley on Taxation, 247; Moser v. White, 29 Mich., 59; Borroughs on Taxation, 133.

Mr. Justice GORDON delivered the opinion of the court, April 12th, 1886.

This was an action of ejectment brought by the plaintiff, George W. Stark, for the recovery of a certain piece of land, situated in the township of Lemon, county of Wyoming. He claimed title by virtue of a tax sale, made by the treasurer of the said county under the 41st section of the Act of the 29th of April, 1844. In order to establish his right to the possession claimed, under the Act above stated, it behooved the plaintiff to show the treasurer's authority to make the sale, and to this end it ought to have appeared that all material conditions and prerequisites had been complied with; as that a tax had been duly assessed upon the property by the proper officers; that such tax had not been paid, and that sufficient personal property could not be found on the premises out of which it could have been collected. Of the latter, the return of the collector is *prima facie* evidence, but the only proper proof of the former are the duplicates and assessments found in the commissioners' office. It was in this that the plaintiff failed. It is true, that the assessment book, and the duplicate issued by the commissioners to the collector of Lemon township, would have been entirely sufficient for the purpose for which they were offered, had it appeared from them, or either of them, that the taxes for which the land was sold had been properly assessed against it: Fager v. Campbell, 5 Watts, 287. But it is certain that land, whether seated or unseated, can be sold for no other taxes than those assessed upon it. Now, one of the objections to the assessment offered in evidence was, that it thereby appeared that the valuation included, not only the land in controversy, but also personal property, and that the assessment of four dollars and ninety-three cents, was not levied upon either separately but upon both jointly. This being the fact the duplicate was properly excluded, for a levy of this kind would not sustain the treasurer's sale, hence, its admission would have been to no purpose. We repeat, the land could be sold only for its own tax, properly assessed upon it, and not for a tax on personal property.

As the tract in controversy was sold for this joint tax, it is clear that the sale was void. Under the Act of 1844, the collector has no power to return such a tax, neither has the treasurer power to collect it by a sale of land. The plaintiff, as

we have already said, was bound, in order to sustain his case, to show the warrant under which the treasurer acted in the disposition of the land in controversy, and that warrant must have its foundation in some Act of Assembly, otherwise that officer had no jurisdiction whatever, and his deed was good for nothing. As, however, the plaintiff has failed to call our attention to any statute which warrants a sale of land for a tax assessed jointly on real and personal property, we must hold that the court did right in directing a verdict for the defendant.

The judgment is affirmed.