Beacom *v.* Robison et ux., Appellants.

516

Argued April 17, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*A. G. Helbling,* for appellants.

*Frank E. Reed,* for appellee.

OPINION BY ARNOLD, J., July 19, 1945:

Plaintiff brought this action of ejectment to recover possession of a house and lot in the Township of Pulaski, Beaver County, Pa., and for mesne profits. Willard L. Beacom, plaintiff's brother, owned the premises from 1917 to 1926, when he conveyed to his sister, Adelaide P. Beacom, who lives in Allegheny County. Through her brother, Willard L. Beacom, plaintiff rented the property. The plaintiff laid down her paper title. The defendants stood on a tax title and offered in evidence deed from the county treasurer of Beaver County to the county commissioners containing the following recitals: "Large lot in C. Pl., Fr. Hse. advertised in the

name of Beacom, W. L. owner or reputed owner, (a) hath been rated and assessed with divers taxes, to wit: County, School, Road or Borough Taxes to the amount of Seventy Three and 92/100 Dollars, (b) which remain unpaid, and (c) the Treasurer having offered the same for sale, agreeably to law, and no person bidding therefor a sum equal to the amount of taxes due, . . . it became the duty of the Commissioners to buy the same, (d) which they accordingly did on the 1st day of May (1940) for $83.32." The deed was subject to the redemption allowed by law; was dated August 15, 1940, duly acknowledged, and recorded on August 21, 1940. The deed from the commissioners was received in evidence and conveyed all the county's interest in the same land, for a consideration of $300. to the defendants. It recited the treasurer's sale on May 1, 1940 to the commissioners and his deed dated August 15, 1940 and recorded, and that the commissioners' public sale took place July 22, 1942. The deed was dated August 10, 1942, was duly acknowledged, and recorded on August 18, 1942.

Defendants offered oral evidence identifying the real estate described in the writ with the real estate conveyed by the treasurer's and the commissioners' deed. The trial court directed a verdict for the plaintiff for the premises, and the jury assessed mesne profits of $292. Defendants' point for binding instructions and motion for judgment n. o. v. were refused, and judgment entered, and defendants appealed.

The tax title in this case depends upon the validity of the treasurer's sale to the county commissioners. The conveyance by the county commissioners to the defendants is none of the plaintiff's concern: *Diamond Coal Co. v. Fisher*, 19 Pa. 267.

The treasurer's sale was for the delinquent taxes for 1932 and was made under the Act of May 29, 1931, P. L. 280 (72 P. S. 5971a et seq.) as amended. This Act was drawn as the result of suggestions and criticisms throughout the Commonwealth, concerning the Act of

1929, P. L. 1684 (72 P. S. 5951 et seq.) which it repealed. The Act of 1931 sets up, in twenty sections covering ten pages, a detailed procedure for the return and sale of seated lands for delinquent taxes.[1] The tax collector makes return of the land to the county commissioners, and as soon as entered by the commissioners the taxes become liens. The returns are certified by the commissioners to the county treasurer who advertises and sells, —the county always "bidding" taxes and costs. *No deed can be given by the treasurer until the court of common pleas confirms the sales,* and the nisi confirmation is upon the report and return of the treasurer presented to the court of common pleas at the next term following the sale. This return must show, inter alia, (a) a brief description of each piece of land sold; (b) the name in which assessed; (c) the amount of the taxes due and returned; and (d) the year for which the taxes were levied.

Section 12 provides, inter alia: "Any . . . exceptions . . . may raise the legality of the taxes. . . . , or the return . . . or . . . that the tax was . . . paid, or . . . the regularity or legality of the proceedings of the treasurer in any respect."

If no exceptions are sustained the sale is confirmed absolutely and "the validity of the assessment of the tax and its return for nonpayment, and the validity of the proceedings of the treasurer . . . shall not thereafter be inquired into judicially, . . . by the person . . . in whose name such property was sold, his . . . heirs, or . . . grantees, . . . subsequent to the date of the assessment of the taxes for which such sale was made; and such sale, after the period of redemption . . . shall be deemed to pass a good and valid title to the purchaser . . ."

---

[1] The Act of 1929 also furnished a procedure but was not as complete and detailed as the Act of 1931.

The Act provides for redemption,[2] for surplus bonds, sales by the county commissioners as to lands purchased by them, and many other details.

The earliest statute permitting the sales of *seated* lands for delinquent taxes was the Act of 1844, P. L. 486, Section 41. It provides: "That all real estate . . . on which personal property cannot be found sufficient to pay the taxes assessed . . . , and where the . . . owners . . . neglect or refuse to pay the said taxes, the collectors . . . shall return the same to the (county) commissioners . . . , and the said lands shall be sold as unseated lands are now sold . . ." Under it no sale could take place until the refusal to pay continued for two years; and the right of redemption existed for one year after notice from the county treasurer that the land had been sold.

Not *all* seated lands could be returned and sold for delinquent taxes, but only lands (1) having insufficient personal property to pay the tax; *and* (2) lands, the owners of which refuse to pay said tax for two years after a demand. The lack of sufficient personal property and the prior demand for the taxes were considered by our courts as "jurisdictional" requirements.[3] The procedure to be followed under the Act of 1844 was the procedure for *unseated* sales under the Act of 1815, P. L. 177. The Municipal Tax Claim Act of 1901, P. L. 364, in *Day v. Swanson,* 236 Pa. 493, 84 A. 958, was held to repeal the Act of 1844. There was then no method of return and sale of seated lands until the Act of 1913, P. L. 285, which set up an undetailed procedure somewhat similar to the Act of 1815, but forbade a return of the seated lands (1) unless the taxes remained unpaid for two years after demand, *and* (2) unless there was insufficient personal property on the premises to satisfy the tax. These two "jurisdictional" prerequisites continued until the

---

[2] In the instant case the property admittedly had not been redeemed.

[3] *Simpson v. Meyers,* 197 Pa. 522, 47 A. 868.

Act of 1927, P. L. 712, 72 P. S. 5641, which provided: "No failure to demand or to collect any taxes by distress . . . shall invalidate any return made . . . for nonpayment of taxes or any tax sale had . . . on such return." This was reenacted in the Act of 1931.

In the instant case the defendants insist that they made out a *prima facie* case for the validity of their tax title, citing: *Meyers v. Manufacturers and Traders National Bank of Buffalo et al.*, 332 Pa. 180, 2 A. 2d 768; *Glass v. Seger*, 265 Pa. 391, 109 A. 211; *Lee v. Jeddo Coal Co.*, 84 Pa. 74; *Coxe v. Deringer*, 82 Pa. 236; *M'Coy v. Michew*, 7 W. & S. 386.

The plaintiff insists that it was incumbent on the defendants to show each separate step resulting in the sale, including the assessment, the levy of the taxes for the respective municipalities, the return of the collector, the advertisement and sale by the treasurer, with proof that the tax had not been paid by the owner and with proof of complete compliance with all statutory directions,— citing a number of cases such as *Norris v. Delaware, L. & W. R. R. Co.*, 218 Pa. 88, 66 A. 1122; *Kramer v. Slattery*, 73 Pa. Superior Ct. 361. But the plaintiff's position does not quite accurately state the question here, which has to do not with what must be *shown*, but rather with the *manner* of making the proof. It is true that such proof must go in, but the real question is whether *prima facie* proof thereof is made by the county treasurer's and the county commissioners' deeds with their recitals.

Many of the decisions go back to the Act of 1815 for unseated sales, the procedure of which was adopted by the Act of 1844.

There were statutes providing for unseated sales prior to the Act of 1815 but of them the Supreme Court said, "Although we have, for a long series of years, had laws under which lands . . . were sold for taxes, and many hundred sales have taken place, yet no instance occurs previous to 1815, in which the purchaser at a sale for taxes has succeeded in making out a good title in

court (unless by aid of the Statute of Limitations).":
*Morton v. Harris,* 9 Watts 319, 322 (1840). In that case
it was also stated (p. 324), "The evil complained of was
the difficulty of proving the election of assessors, their
having taken the prescribed oath, valued the land and
duly returned it to the commissioners; then the election
and qualification of the commissioners, their having di-
rected so much per cent. to be levied, their warrant to
sell, the advertisement for so many weeks in so many
daily and so many weekly papers, &c., &c." "The Act of
1815 was intended to dispense with this proof after a
lapse of two years from the time of sale. The intention of
it was to change the evidence, *to substitute the presump-
tion that everything was rightly done,* for the proof that
it was rightly done . . ." (p. 323) (Italics supplied)

Therefore, *Morton v. Harris* applied to tax deeds the
doctrine of omnia praesumuntur rite esse acta, which
maxim appears in various forms, but are all approxi-
mated in the language that a *prima facie* presumption of
the regularity of the acts of public officers exists until
the contrary appears. Such a presumption is a proce-
dural expedient: *Watkins v. Prudential Insurance Co.,*
315 Pa. 497, 173 A. 644. In tax sales it is particularly
suitable. If the acts are within the scope of the officer's
powers the presumption exists. The rule is stated in 31
C. J. S., Evidence, Section 146, in part: "It is, as a gen-
eral rule, presumed that a public official properly and
regularly discharges his duties, or performs acts re-
quired by the law, in accordance with the law and the
authority conferred on him, and that he will not do any
act contrary to his official duty or omit to do anything
which such duty may require."

In *M'Coy v. Michew,* 7 W. & S. 386, 389 (1844) de-
fendant in ejectment stood on the tax title and offered the
county treasurer's deed and the commissioners' deed.
The Supreme Court held: "The presumption is, until the
contrary is shown, that the property was sold according
to law."

In *Peters v. Heasley*, 10 Watts 208 (1840), defendant in ejectment stood on the tax title. The Supreme Court observed (p. 209) "After a series of decisions on the construction and effect of the Act of 13th March, 1815, from 13 S. & R. &c., to this time, we are asked in this case to reconsider them all, to go back to the earliest decisions, and decide that unless the purchaser can show at the trial that every direction and requisite of the law has been punctually complied with, the purchaser has no title. The Act of 1815 was framed expressly to dispense with such proof, and it has been so repeatedly decided that after two years allowed by the act within which an owner might redeem all proof of any more than that a tax was assessed and a sale made was unnecessary, that we had a right to suppose the matter at rest." This proof was made by the deeds: *Birch v. Fisher,* 13 S. & R. 208 (1825) ; *Coxe v. Deringer,* 82 Pa. 236 (1876).

In *Cuttle v. Brockway,* 24 Pa. 145, 147 (1854), it was said: "There is nothing to which the maxim *omnia praesumuntur rite esse acta* applies with so much force as to a tax title."

In *Meyers v. Manufacturers and Traders National Bank of Buffalo et al.,* 332 Pa. 180, 183-4, 2 A. 2d 768, the Supreme Court stated: "It is argued that the treasurer's deed did not vest title in the county commissioners, because it was not shown that all the statutory requirements leading up to a tax sale had been complied with . . . The deeds recite that the lands had been rated and assessed for levying and raising lawful taxes, that the taxes were unpaid for two years, and that the lands were sold by the treasurer and purchased by the commissioners. In order to render the deed from the treasurer admissible in evidence, it was not necessary to show compliance with all the prerequisites of the treasurer's sale. It is sufficient if it appears that the grantor was treasurer and that he did sell and convey to the commissioners: Huston v. Foster, 1 W. 477. The recitals in a county treasurer's deed made in pursuance of a sale for taxes raise the presumption that the sale was con-

ducted according to law, and authorize the admission of the deed in evidence without further proof: M'Coy v. Michew, 7 W. & S. 386; Coxe v. Deringer, 82 Pa. 236; Lee v. Jeddo Coal Co., 84 Pa. 74; Glass v. Seger, 265 Pa. 391, 109 A. 211."

An examination has been attempted of the multitude of cases reiterating in various forms the statement substantially: "There must be made to appear the various statutory steps", by which the treasurer's sale is had. But in each of these cases it affirmatively appeared in the evidence that some statutory step *had not* been properly taken. We find no case where it has been held that the deed of the county treasurer did not constitute prima facie proof that all of the antecedent steps had been properly taken, with the possible exception of those cases which indicated that the insufficiency of personal property on the premises, and the prior demand for the taxes, were jurisdictional facts, and hence had to appear before there was any jurisdiction of the collector to make the return. The subsequent statutes have eliminated this position.

In the cases where it is stated that the respective steps must appear, the court is not speaking of the *manner* by which the proof is made. Such proof must appear, but it still may appear prima facie by virtue of the presumption. This does not harm the opposite party who is not foreclosed from showing the contrary nor deprived of any right or thing. He can show what he pleases. But if he is not pleased to show that of which he actually complains, he must not be displeased because the law did not do for him what he could, but would not, do for himself.

In the proof of the particular steps the courts used the same presumption to supply prima facie proof. Where the tax collector had no authority to return the seated lands if there was sufficient personal property on the premises to pay this tax, even this so-called jurisdictional fact was deemed to have been proved by the

return of the tax collector stating that fact, and it was presumed that the fact was true in the absence of evidence to the contrary: *Stark v. Shupp,* 112 Pa. 395, 399, 3 A. 864. Land was presumed to have been seated until he who asserted it unseated had shown the fact: *Jackson v. Gunton,* 26 Pa. Superior Ct. 203, 212, aff. 218 Pa. 275, 67 A. 467. The word "assessment" is used in the decisions both in the sense of the valuation and as the millage levy of taxes. In *M'Coy v. Michew,* supra, books of the commissioners containing *copies* of the assessor's valuations and a *charge* of the tax which only the commissioners could make, carried a presumption that the officers acted regularly and properly, and that the valuation and millage levy were prima facie proved. Where the assessment (valuation) was in controversy the presumption was carried to the length of establishing an assessment by a "paper" found in the commissioners' office "purporting to be a *rough draft* of an assessment on unseated land": *Bratton v. Mitchell,* 7 W. & S. 259. Books in the commissioners' office were held to be prima facie proof of the regularity of the assessor's valuation: *Fager v. Campbell,* 5 Watts 287.

Reasoning and common sense dictated the rule one hundred years ago. It has even greater relevancy today.

It seems senseless to require proof of the assessment and the tax levy when we all know that the commissioners send their precept to each local assessor (prior to the County Assessment Act) with a book in which the assessor places the valuation of each piece of real estate and the name of the reputed owner, and then returns the book to the county commissioners with his affidavit and certificate that he has performed his duties according to law. Usually (and in the instant case) that valuation applies to all three municipalities taxing that land, the county, the township (for road tax) and the school district. The county commissioners themselves levy the county tax and they obtain from the township and the school district certificates of those respective levies.

The county commissioners themselves prepare the tax duplicates which show the amount in dollars of the tax levied by each of the three municipalities.[4]

We know that the tax collector, a public official under bond and oath, receives the duplicates from the county commissioners. He may return any land on which the taxes are unpaid (without regard to personal property or prior demand). He certifies in his return that the tax in question is unpaid, and sends the returns to the county commissioners as required by the Act of 1931. Is the tax collector to be called to have him say on the witness stand that to which he previously certified and which the law required of him? The returns thus certified to the commissioners (public officials acting for all of the districts, not merely for the county: Cf. *Andrews Land Corp. Appeal,* 149 Pa. Superior Ct. 212, 27 A. 2d 700) are certified by them to the county treasurer. Must the commissioners be called to testify that they did certify them to the treasurer, when the statute *requires* them so to do? The county treasurer then advertises and makes the sale required by statute. Must he be called to prove that he did in fact advertise, and did in fact sell the given piece of real estate, which acts the statute specifically directed him to perform?

The county treasurer under Section 12 of the Act of 1931 makes up a report and return to the court of common pleas of all of the lands advertised and sold, containing the time and place of the sale, the name of each purchaser and the amount bid, the name of the reputed owner and the amount of the tax due. Must the treasurer be called to say *orally* to the court what he had already reported and returned *in writing* to the same court? After the return of the treasurer's sales to the court "if it shall appear to said court that such sale has

---

[4] The school district may make its own duplicate, but the usual practice is to request the county commissioners, at the school district's expense, to add the school tax to the regular duplicate.

been regularly conducted, . . . the said report and the sale so made shall be confirmed nisi." In determining the regularity may not the court rely on the presumption that each public officer did what the law required, or must it determine that each individual assessor did assess, that each separate municipality did levy a tax, that each particular tax was unpaid to each particular tax collector and that each tax collector did return the lands? It will not do to say that it is only the regularity of the advertisement and sale that is examined by the court because the same Section 12 provides for objections or exceptions as to "the legality of the taxes, . . . or the return thereof, or . . . that the tax was actually paid, or . . . the regularity or legality of the proceedings of the treasurer in any respect."

If the owner of the tax title was the plaintiff in ejectment, his declaration would be entirely good upon the mere averment of the treasurer's and the commissioners' deeds: *Meyers v. Manufacturers and Traders National Bank of Buffalo et al.,* supra; *O'Hay v. Tormey,* 98 Pa. Superior Ct. 237. It would then be incumbent on the former owner to point out the *particular* things of which he complained, and he would be unable to rely upon the hope that the opposite party might neglect, or be unable to prove, a fact undisputed or undenied. While there is no replication under the Ejectment Act neither is there any impelling reason why the burden of *complaint* must change because the owner of the tax title is the defendant.

In tax title cases there is always reiterated the same objection that the proper *manner* of proof has not been pursued when actually the facts themselves are not in dispute. In Pennsylvania we have been seeking to avoid wasting time in court by taking evidence to prove facts not in controversy, and have provided pre-trial conferences to obtain stipulations of them. Pa. R. C. P. No. 212, 332 Pa. xlviii-xlix, 12 P. S. App'x.

It is inconceivable that the Beaver County commissioners did not levy a county tax. Surely secondary

evidence is sufficient proof of that undeniable fact. And if the county levy was made, the treasurer's sale is unaffected even though both the township and the school district levies be void: *Trexler v. Africa,* 27 Pa. Superior Ct. 385; *Carns v. Matthews,* 114 Pa. Superior Ct. 528, 533.

The treasurer's deed supplied *prima facie* proof that all the steps antecedent to the sale were properly taken; and a familiarity with the practical every day side of the law confirms this conclusion.

The trial court should not have directed a verdict for the plaintiff because defendants, by the treasurer's and the commissioner's deeds, made out a prima facie case on all branches except the identification of the land described in the deeds with that described in the writ of ejectment. Defendants offered oral evidence on this sufficient to go to the jury. But the defendants were not entitled to judgment n. o. v. because the evidence of identification was *oral* and though uncontradicted must go to the jury and cannot sustain binding instructions: *Nanty-Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523; *Mocan v. Nejak,* 126 Pa. Superior Ct. 149, 190 A. 208; *MacDonald v. Pa. R. R. Co.,* 348 Pa. 558, 561, 36 A. 2d 492. Therefore, a new trial must be had.

Since the case must be re-tried, it might be pointed out that parol evidence (*Hiester v. Laird,* 1 W. & S. 245; *Diamond Coal Co. v. Fisher,* 19 Pa. 267; *Laird v. Hiester,* 24 Pa. 452) as well as prior assessments of the land (*Woodside v. Wilson,* 32 Pa. 52) are admissible on the issue of identification. The best method of identification is the return of the tax collector which usually requires some oral explanation. Indeed, if it appears that this return does not sufficiently identify the land, both the return and the treasurer's sale are bad: *Challac's Appeal,* 147 Pa. Superior Ct. 111, 22 A. 2d 375, for the treasurer's deed imports only a prima facie validity.

The judgment of the court below is reversed with a venire.