# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Souffrant,              :

                                  :

             Appellant   :

                                    :

            v.            :  No. 401 C.D. 2018

                                    :  Submitted: December 13, 2019

Lancaster County District      :

Attorney's Office              :

## <u>OPINION NOT REPORTED</u>

## MEMORANDUM OPINION
## PER CURIAM                               FILED: April 24, 2020

Kevin Souffrant (Requester) appeals, *pro se*, the order of the Lancaster County Court of Common Pleas (trial court) denying his appeal of the denial of his request for autopsy records by the Lancaster County District Attorney's Office (DA's Office) under the Right-to-Know Law (RTKL).[1] We affirm.

Requester is an inmate at the State Correctional Institution at Huntingdon. On July 3, 2014, he was sentenced to a mandatory term of life imprisonment based on his conviction for first-degree murder, and aggregate consecutive sentences of 11- to 22-year terms for his convictions for aggravated assault, two counts of simple assault, terroristic threats, and endangering the welfare of children. On direct appeal, the Superior Court affirmed the foregoing judgment of sentence, *see Commonwealth v. Souffrant* (Pa. Super., No. 1299 MDA 2014, filed July 24, 2015), and Requester did not seek further review by the Supreme Court.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

On December 15, 2016, Requester filed a RTKL request with the Lancaster County Coroner's Office (Coroner's Office) seeking a copy of the report made of the homicide victim's pronouncement of death and a copy of everything written and witnessed when the Coroner arrived at the crime scene. The Coroner's Office transferred the request to the DA's Office, and, on December 23, 2016, the DA's Office denied the request, asserting that the requested records are exempt from disclosure under the Criminal History Record Information Act (CHRIA)[2] and the RTKL.[3]

---

[2] 18 Pa. C.S. §§9101-9183. Specifically, Section 9106(c)(4) of the CHRIA states:

> Investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa. C.S. §9106(c)(4).

[3] Specifically, Section 102 of the RTKL excludes from the definition of "Public Record" materials protected by privilege or state or federal law, and the DA's Office asserted that the records were protected by the CHRIA and the law enforcement evidentiary privilege. Additionally, the DA's Office claimed that the records were exempt from disclosure, *inter alia*, under Section 708(b)(2), (16), and (20) of the RTKL, which provides, in pertinent part:

> **(b) Exceptions.—**[T]he following are exempt from access by a requester under this act:
>
> * *
>
> (2) A record maintained by an agency in connection with . . . law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity[.]

**(Footnote continued on next page…)**

(continued…)

* * *

(16) A record of an agency relating to or resulting in a criminal investigation, including:

(i) Complaints of potential criminal conduct other than a private criminal complaint.

(ii) Investigative materials, notes, correspondence, videos and reports.

* * *

(iv) A record that includes information made confidential by law or court order.

(v) Victim information, including any information that would jeopardize the safety of the victim.

(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.

* * *

(D) Hinder an agency's ability to secure an arrest, prosecution or conviction.

(E) Endanger the life or physical safety of an individual.

* * *

(20) An autopsy record of a coroner or medical examiner . . . or a copy, reproduction or facsimile of an autopsy report, a photograph, negative or print, including a photograph or videotape of the body or any portion of the body of a deceased person at the scene of death . . . taken or made by or caused to be taken or made by the

**(Footnote continued on next page…)**

On January 9, 2017, Requester appealed the DA's Office's decision to the Office of Open Records (OOR), challenging the denial by asserting that the requested records did not fall into any of the cited exceptions and that he had a due process right to the information because it provided exculpatory evidence relating to his criminal prosecution.[4] Both parties submitted additional argument and evidence in support of their respective positions. Specifically, the DA's Office submitted the affidavit of Michelle Darlington, Deputy Coroner, who attested that although she did create handwritten notes while at the crime scene to use as a reference when typing her report, she shredded the notes shortly afterwards.

On February 8, 2017, OOR issued a Final Determination, in which it concluded: (1) Requester's status as a criminal defendant in the matter was irrelevant to its determination; (2) Darlington's affidavit supported a finding that any handwritten notes do not exist; (3) the Coroner's Office's report is not exempt from disclosure under Section 708(b)(2) of the RTKL; and (4) pursuant to Section 503(d)(2) of the RTKL, only the DA's Office Appeals Officer, and not OOR, possessed jurisdiction to determine whether the requested records were exempt from disclosure under Section 708(b)(16) of the RTKL.[5] As a result, OOR denied

---

**(continued…)**

> coroner or medical examiner. This exception shall not limit the reporting of the name of the deceased individual and the cause and manner of death.

65 P.S. §67.708(b)(2), (16), (20).

[4] *See Brady v. Maryland*, 272 U.S. 83 (1963) (holding that the prosecution violates due process when it fails to disclose evidence favorable to the defendant).

[5] 65 P.S. §67.503(d)(2). Section 503(d)(2) of the RTKL states, "The district attorney of a county shall designate one or more appeals officers to hear appeals . . . relating to access to **(Footnote continued on next page…)**

Requester's appeal in part, and transferred Requester's appeal in part to the DA's Office Appeals Officer, and informed the parties of their right to appeal to the trial court within 30 days pursuant to Section 1302(a) of the RTKL.[6]

On February 27, 2017, Requester appealed the Final Determination to the trial court. On August 29, 2017, following a remand from the Superior Court, the trial court entered an order denying Requester's appeal because "the notes taken by the Deputy Coroner were incorporated and subsumed by the autopsy report and are qualified for the exception from public access under [65 P.S.] §67.708(b)(20)." Trial Court 8/29/17 Order. Requester then filed the instant appeal.[7, 8]

In this appeal, Requester argues that the requested records are not subject to the provisions of Section 708(b)(2) of the RTKL because they are

---

**(continued…)**

criminal investigative records in possession of a local agency of that county. The appeals officer designated by the district attorney shall determine if the record requested is a criminal investigative record."

[6] *See* 65 P.S. §67.1302(a) ("Within 30 days of the mailing date of the final determination of the appeals officer relating to a decision of a local agency . . . a requester . . . may file a petition for review . . . with the court of common pleas for the county where the local agency is located.").

[7] Requester filed his appeal of the trial court's August 29, 2017 Order to the Superior Court. By February 13, 2018 Order, the Superior Court transferred the appeal to this Court. *Commonwealth v. Souffrant* (Pa. Super., No. 1547 MDA 2017, filed February 13, 2018).

[8] This Court maintains exclusive jurisdiction of appeals from final orders of the trial court in RTKL matters. Section 762(a)(3) of the Judicial Code, 42 Pa. C.S. §762(a)(3). Our standard of review is limited to determining whether the trial court committed an error of law, violated constitutional rights, or abused its discretion. *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672, 674 n.2 (Pa. Cmwlth. 2010), *aff'd*, 45 A.3d 1029 (Pa. 2012). "'The scope of review for a question of law under the [RTKL] is plenary.'" *Id.* (citation omitted).

accessible pursuant to the provisions of Sections 1201-B through 1252-B of The County Code,[9] and that Section 3101.1 of the RTKL specifically excludes from its provisions any records for which access is granted by another conflicting statute.[10] Requester notes that Section 1236-B states, "In counties of the third . . . class[,[11]] every coroner, within 30 days after the end of each year, shall deposit all official records and papers for the preceding year in the Office of the Prothonotary for the inspection of all persons interested therein."  16 P.S. §1236-B.  Requester also notes that Section 1252-B[12] permits the Coroner to charge a fee for reports obtained

---

[9] *Act of August 9, 1955, P.L. 323, *as amended*, added by the Act of October 24, 2018, P.L. 931, 16 P.S. §§1201-B – 1252-B.  Based on our disposition of the instant appeal, we refer to the provisions of The County Code now in effect.

[10] *See* 65 P.S. §67.3101.1 ("If the provisions of this act regarding access to records conflict with any other . . . State law, the provisions of this act shall not apply.").

[11] Lancaster County is a County of the Third Class.  *See* 123 Pa. Manual 6-11 (2017).

[12] Section 1252-B of The County Code states, in relevant part:

> The coroner shall charge and collect a fee of $500 for an autopsy report, $100 for a toxicology report, $100 for an inquisition or coroner's report, $50 for a cremation or disposition authorization and other fees as may be established from time to time for other reports or documents requested by nongovernmental agencies in order to investigate a claim asserted under a policy of insurance or to determine liability for the death of the deceased.

16 P.S. §1252-B.  *See also* Section 1217-B, 16 P.S. §1217-B, which states:

> A request for an examination or other professional service by another . . . person may be complied with at the discretion of the coroner under guidelines established by the county commissioners. . . .  A fee and charge for an examination or professional service shall be established by the coroner, subject to approval by the county commissioners, and shall be accounted for

**(Footnote continued on next page…)**

6

prior to their annual deposit with the Prothonotary. Citing, *inter alia*, *Penn Jersey Advance, Inc. v. Grim*, 962 A.2d 632 (Pa. 2009), Requester contends that his request for the Coroner's records is not governed by the RTKL, but, rather, The County Code. We agree.

In this case, Requester is seeking the Coroner's report for a homicide that was committed in 2013. Pursuant to Section 1236-B of The County Code, the Coroner was required to "deposit all official records and papers for the preceding year in the Office of the [Lancaster County] Prothonotary for the inspection of all persons interested therein" by January 30, 2014. 16 P.S. §1236-B.[13] As the Supreme Court has stated:

> It is clear from these [predecessor] sections of [The County Code[14]] that conducting autopsies is one of the

---

**(continued…)**

> and paid to the county treasurer as provided under [S]ection 1760[, 16 P.S. §1760]. Payment for an examination or professional service shall be the responsibility of the . . . county or person requesting the service.

[13] *See, e.g.*, *Beacom v. Robison*, 43 A.2d 640, 643 (Pa. Super. 1945) ("'It is, as a general rule, presumed that a public official properly and regularly discharges his duties, or performs acts required by law, in accordance with the law and the authority conferred on him, and that he will not do any act contrary to his official duty or omit to do anything which such duty may require.'") (citation omitted).

[14] Section 1219-B(a) and (b) of The County Code provides, in pertinent part:

> **(a) Autopsy.**—If, after investigation, the coroner is unable to determine the cause and manner of death, the coroner shall perform or order an autopsy on the body.
> **(b) Inquest.**—If the coroner is unable to determine the cause and manner of death following an autopsy, the coroner may conduct an

**(Footnote continued on next page…)**

7

official duties of a coroner. It follows logically that a coroner's resulting autopsy reports constitute "official records and papers" within the meaning of [the prior version of Section 1236-B]. Accordingly, to the extent that [*In re Buchanan*, 880 A.2d 568 (Pa. 2005),] left any room for doubt, we now hold expressly that autopsy reports are "official records and papers" under [the prior version of Section 1236-B.[15]]

*Penn Jersey Advance, Inc.*, 962 A.2d at 636-37 (footnote omitted).

Moreover, although Section 1224-B of The County Code[16] requires the DA's Office to cooperate with the Coroner in the exercise of his or her duties,

---

**(continued…)**

inquest upon a view of the body as provided by law. At the inquest, the coroner's duty shall be to:

(1) Ascertain the cause of death.

(2) Determine whether an individual other than the deceased was criminally responsible by act or neglect and the identity of the individual who may be responsible.

(3) Examine further evidence and witnesses regarding the cause of death.

16 P.S. §1219-B(a), (b).

[15] *See, e.g.*, *Verizon Pennsylvania, Inc. v. Commonwealth*, 127 A.3d 745, 757 (Pa. 2015) ("One of the most venerable and fundamental tenets of statutory interpretation is that, whenever our Court has interpreted the language of a statute, and the General Assembly subsequently amends or reenacts that statute without changing that language, it must be presumed that the General Assembly intends that our Court's interpretation become part of the subsequent legislative enactment.").

[16] *See* 16 P.S. §1224-B ("In the exercise of duties under this article, the coroner shall consult with and advise the district attorney as may be practicable. The district attorney may act as counsel to the coroner in matters relating to inquests."). *See also* Section 1223-B of The County Code, 16 P.S. §1223-B ("If a coroner assumes jurisdiction of a body under the provisions **(Footnote continued on next page…)**

that does not render the Coroner's records those of the DA's Office. As this Court has explained:

> "In discerning whether records qualify as records 'of' a particular agency, we consider the subject-matter of the records. The location of the record or an agency's possession does not guarantee that a record is accessible to the public; rather, the character of the record controls." "[A] record qualifies as 'of' an agency when that record documents a transaction or activity of the agency. 'Documents' means proves, supports [or] evidences."

*Philadelphia District Attorney's Office v. Stover*, 176 A.3d 1024, 1028 (Pa. Cmwlth. 2017) (citation omitted).

Therefore, although the DA's Office may have had a copy of the Coroner's records for use in Requester's criminal prosecution, it is not a DA's Office record that may be obtained pursuant to the provisions of the RTKL.[17] Rather, as he argues in this appeal, Requester should have proceeded under the provisions of Section 1236-B of The County Code to obtain the records sought herein from the Office of the Lancaster County Prothonotary. *See Penn Jersey Advance, Inc.* As a result, the trial court did not err in denying Requester's appeal of the denial of his request for the autopsy records by the DA's Office.

---

**(continued…)**

of this article or another law, the body may not be released or removed from the coroner's jurisdiction except upon the coroner's directions and consent, in accordance with law.").

[17] *See Stover*, 176 A.3d at 1028-29 ("This Court has held that a sentencing order is a record 'of' the judiciary and, as such, it is not disclosable under the RTKL. The fact that the District Attorney may possess—or readily obtain—a copy of the sentencing order in no way transforms the record of a judicial agency into a record of a local agency.") (citations omitted).

Accordingly, the trial court's order is affirmed[18]

---

[18] Based on our disposition of this claim, we will not address any additional claims raised in this appeal and the DA's Office Application to Quash is dismissed as moot.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Souffrant,                    :
                                    :
                 Appellant          :
                                    :
         v.                         :  No. 401 C.D. 2018
                                    :
Lancaster County District           :
Attorney's Office                   :


**PER CURIAM**


# **O R D E R**


AND NOW, this 24th day of April, 2020, the order of the Lancaster County Court of Common Pleas dated August 29, 2017, is AFFIRMED. The Lancaster County District Attorney's Office Application to Quash is DISMISSED as moot.